# COURT OF APPEALS OF TEXAS.

## AUSTIN TERM, 1886.

[No. 3750.]

### J. G. THOMPSON *v.* THE STATE.

1. THEFT—PRACTICE—EVIDENCE.—The appellant being on trial for the theft of McN.'s sheep, the State was properly allowed to read in evidence that part of the transcript of the proceedings of the examining court which disclosed that the complaint was made by McN. But in permitting the State, over objection by the defense, to prove by the said transcript that the appellant waived examination and gave bail, the trial court erred.
2. SAME—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for the theft of sheep.

APPEAL from the County Court of Wise. Tried below before the Hon. W. W. Brady, County Judge.

The conviction in this case was for the theft of two sheep, of the value of two dollars each, the property of Margaret McNeeley, in Wise county, Texas, on the first day of February, 1885. The punishment assessed against the appellant was a fine of thirty-five dollars, and confinement in the county jail for the period of ten days.

T. J. Chitwood was the first witness for the State. He testified that he was acquainted with the defendant, and with Mrs. Margaret McNeeley, the prosecutrix. In July or August, 1884, the witness, as agent for Mrs. McNeeley, purchased three head of sheep from Jack Holden. One of the animals was a buck, and the other two were ewes. Those sheep the witness turned into Mrs. McNeeley's herd, which then numbered between fifty and seventy-five head. One of the ewes purchased from Holden was a pet animal, and was, in part, Merino stock. Her right ear was cropped. Neither of the other two Holden sheep was marked or branded. The marked ewe was a very gentle animal,

and would permit the children to handle and fondle her. She was white in color, and, except that she was remarkably gentle, was in no wise different from other white ewes. She was worth from two to two and a half dollars, the latter sum being paid to Holden for her. The witness was living at Mrs. McNeeley's, in her employ, when he bought the sheep for her from Holden, and continued to live at her house in her employ until April, 1885. The pet ewe disappeared from its range in the winter or spring of 1885, and was gone about six weeks, when it returned with its left ear cropped, and branded T with paint on the hip, and a bar in the face with an iron. Witness had often heard the defendant and William Thompson claim sheep in the mark and brand worn by the ewe when she returned to Mrs. McNeeley. Defendant had three brothers who lived with him. Defendant often asked after sheep in the mark and brand described, always speaking of them as "my" or "our" sheep. Witness did not know which of the Thompson brothers owned the mark and brand described. When the ewe came back to Mrs. McNeeley's in the mark and brand described, she came with a number of the Thompson sheep.

Cross-examined, the witness stated that he was well enough acquainted with the Thompsons to distinguish them apart, but he did not know them apart by given names. The pet ewe described had no lamb when it disappeared, but had one several weeks old when it reappeared. The ewe, prior to her disappearance, ranged with Mrs. McNeeley's other sheep, the range extending about a mile around Mrs. McNeeley's house. Mrs. McNeeley cared for the ewe as she did her other sheep. She had it turned out to range with her other sheep, and when it came up at night it was penned with her other sheep. The Thompsons had several hundred head of sheep running on the same range. Their sheep and Mrs. McNeeley's sheep frequently got mixed. The Thompson sheep mark and brand was well known throughout the neighborhood. The Thompsons often came to Mrs. McNeeley's and got sheep belonging to them from Mrs. McNeeley's pen. Witness aided to shear and brand Mrs. McNeeley's sheep in the fall of 1884. The sheep she bought from Holden were not sheared nor were they branded. The pet ewe described was not in Mrs. McNeeley's mark when it disappeared, nor was it branded. The Thompsons lived on their farm, between one and two miles distant from Mrs. McNeeley's place, when the ewe disappeared, and had lived there two years or more. Witness

did not know when, nor where, nor by whom the ewe was marked and branded. The complaint upon which this prosecution is based was handed to the witness at this point, and he testified that he signed and swore to it.

George Rosson testified, for the State, that the prosecutrix, Mrs. McNeeley, was his mother. Specifying no dates, witness stated that his mother bought three sheep, a buck, ewe, and lamb from Mr. Holden, and had them brought home and placed in her herd of sheep. Subsequently those sheep were cared for just as the other sheep in the herd were cared for. They were turned out on the range with the herd in the morning, and penned with the herd at night. The Holden ewe disappeared late in the winter or early in the spring, and was gone a month or two. She came back marked with a crop off each ear, and branded with a paint cross on the hip and a bar in the face made with an iron. She was then put into the pen with Mrs. McNeeley's other sheep. A few days after the ewe was penned, the defendant and his brother William rode by Mrs. McNeeley's house. As they passed they asked if they had any sheep in Mrs. McNeeley's pen. Witness replied that they had one head in the pen. They then turned and went into the pen, followed by the witness. The Holden ewe was captured, and, as it was being taken out of the pen, the witness asked the defendant and his brother William if they were sure that the animal belonged to them. They answered that they were. The question and answer were repeated after the animal was removed from the pen, and a third time at some distance from the pen, to which point the witness followed the parties, by direction of his mother. The replies, claiming the sheep, were made by the defendant. When the question was asked and answered the last time, William Thompson remarked to witness: "If you don't want to lose your sheep, you must brand them with an iron." The ewe and the other two sheep purchased from Holden were part Cotswold, and all of them belonged to witness's mother, Mrs. McNeeley. When taken from Mrs. McNeeley's pen, by defendant and William Thompson, the ewe had a lamb.

Cross-examined, the witness stated that the ewe and lamb were taken from his mother's pen by the defendant and William Thompson, in the day time, the sun being about two hours high. The pen was about sixty yards distant from the road on which the witness encountered defendant and William Thompson, when they asked him if any of their sheep were in Mrs. Mc-

Neeley's pen. The defendant and William Thompson frequently asked if any of their sheep were about Mrs. McNeeley's premises. The Thompson and McNeeley herds of sheep often got mixed on the range, and sheep belonging to the Thompson herds were often penned with the McNeeley sheep in the McNeeley pen. The Thompson sheep were easily distinguished by the Thompson mark and brands, heretofore described. At the time that the defendant and his brother got the ewe and lamb from the pen, they got one of their own sheep. They first secured the sheep which properly belonged to them, identifying it by their mark and brand, and then looked over the herd, about fifty in number, and took the ewe, also in their mark and brand, and her unmarked and unbranded lamb. They drove off the two sheep, and the lamb followed.

Further testifying, this witness stated that the scab prevailed among Mrs. McNeeley's sheep during the winter. Several sheep were lost from that herd, and some of them were found dead. Witness did not protest against the Thompsons taking the ewe in question. He made no effort to prohibit them. He merely asked them several times if the ewe belonged to them, and made no claim to the animals for his mother. About a week after this transaction, the same Thompsons—the defendant and William—came to Mrs. McNeeley's and asked if any of their sheep were in the pen. Witness replied in the affirmative, and his brother Robert helped the Thompsons separate them. Witness knew the Thompson stock of sheep only by their marks and brands. Their stock on the range comprised several head. Witness had never known the Thompsons to drive sheep from his mother's premises not in their mark and brand. Witness and his brother Robert had charge of Mrs. McNeeley's sheep at the time that the ewe was taken. All of Mrs. McNeeley's sheep did not come home every night. The ewe, prior to her disappearance, did not come home every night. When she returned, after her long absence, in the mark and brand of the Thompsons she had a new lamb, and some of her fleece was gone. Witness did not know which of the Thompsons owned the Thompson mark and brand. He did not know who marked and branded the ewe, nor when she was marked and branded. When purchased, the ewe in question was marked with a crop off the right ear. Her mark was not changed by witness or others acting for Mrs. McNeeley. Mrs. McNeeley's sheep, except this ewe, were in her brand, the figure 4 in paint on the hip,

and her mark, a swallowfork and underslope in the right ear. When the defendant and William Thompson were at Mrs. Mc-Neeley's place the last time mentioned in the testimony, they were accompanied by John Nigh, G. W. and James Thompson.

Mrs. Margaret McNeeley testified, for the State, that she purchased three head of sheep from J. H. Holden, which sheep were taken home for her by the witness Chitwood, and turned into her herd. One of the two ewes comprising this purchase was marked with a crop off the right ear. The other ewe and the buck were unmarked. The marked ewe was the dam of the other ewe, which was a young animal. The marked ewe came to the pens at night with the herd until some time late in the winter or early in the spring of 1885, when she disappeared, and was missing for some two or three months. Witness missed other sheep at the same time. After an absence of two or three months, as stated, the ewe came home, marked with a crop off each ear, and branded as stated by previous witnesses. She brought a young lamb with her. Defendant and William Thompson came to witness's house one evening after the return of this ewe, and with witness's son, George Rosson, went into her sheep pens, and took the ewe off, together with one of their sheep. This was in April, 1885. Witness directed her son, George Rosson, to ask the Thompsons if the ewe belonged to them. The Thompsons did not have witness's consent to take the ewe. Witness had never seen the animal since. She did not know which of the Thompsons owned the Thompson sheep brand and mark, but the defendant and his brother William claimed the sheep in the Thompson mark and brand, and exercised care and control over them. Witness could not say what was the market price of sheep when the ewe and lamb were taken, but thought they were then worth at least two dollars each. She paid two dollars and a half each for the animals when she bought them from Holden in the previous August. A few weeks after the ewe and lamb were taken from her pen, the witness reported the fact to G. W. Washburn and others, and then went before justice of the peace Cochran, and made complaint against the defendant and William Thompson for theft of the sheep. Other sheep in the Thompson mark and brand came to witness's pen at the same time that the ewe in question came up. Those sheep may have been the sheep of the witness, missed at the same time, but witness was able to identify only the pet ewe.

Cross-examined, the witness stated that defendant and his

brother William took the animals in question in the day time, when the sun was one or two hours high. They asked witness's son, George Rosson, if any of their sheep were in witness's pen. Witness did not know what reply, if any, was made by George. George went with them into the sheep pen. Witness offered no objection to the taking of the ewe; she merely directed her son to ask them if they were sure they owned the sheep. Witness did not report the taking of the sheep to her neighbors until several days had elapsed. Witness's sons, George and Robert, herded her sheep off and on, about the time the ewe was taken. The "Holden" sheep bought by the witness ran on the range with her other sheep, a hundred and thirty in number. Witness's and the Thompson sheep often got mixed, and the Thompsons often stopped at witness's house to get sheep belonging to them which got mixed with witness's. Witness had never known the Thompsons to take any sheep other than such as were in their mark and brand. The Thompsons owned a large number of sheep running on the range, and their mark and brand were well known throughout the neighborhood. Witness did not know when, where, nor by whom the ewe in question was marked and branded. The pen from which the ewe and her lamb were taken was about fifteen steps from witness's house, and some fifty or sixty yards from the road. Witness had never brought a civil action against the Thompsons for the ewe and lamb. T. J. Chitwood had nothing whatever to do with this prosecution. The complaint was made by the witness in person, before justice of the peace Cochran.

G. W. Washburn testified, for the State, that the defendant and his brothers claimed two sheep brands—one a bar down the forehead, made with an iron, and the letter T in paint on the hip, and the other a cross in the forehead, made with an iron, and a cross in paint on the hip. Witness saw the three sheep bought by Mrs. McNeeley from Holden when they were taken to Mrs. McNeeley's home. One of them was a pet ewe, marked with a crop off the right ear. He saw the same ewe after her disappearance and return. She returned marked and branded as described by previous witnesses. Witness had frequently seen the defendant driving and herding sheep in what is known as the Thompson brand and mark. Witness had often seen defendant and William Thompson hunting sheep in the Thompson brand and mark. Defendant sometimes spoke of the sheep as "my" sheep, and sometimes as "our" sheep. Mrs. McNeeley

called witness's attention to the ewe in question some time after its return. Witness examined it, and thought that one of its ears appeared sore. It had the appearance of having been recently, though not "freshly" cut. The ewe was a perfectly gentle animal, and permitted the witness to take her head in his hands and examine the ear closely. Shortly after the ewe and lamb were taken from Mrs. McNeeley's pen, she reported the fact to witness, and asked his advice. Defendant's three brothers, William, R. W. and E. H. Thompson, were present on this trial, under the rule, as witnesses for the defendant. Witness once saw J. H. Nowlin, a brother-in-law of the Thompsons, driving sheep on the range.

Cross-examined, the witness testified that he did not know which of the Thompsons owned the brand and mark. The mark and brand were well known and recognized in the neighborhood, and the right of the Thompsons to it had never been, so far as witness knew, disputed. The four brothers were farmers and sheep raisers, and had lived for some time in the neighborhood. Witness was not present when the sheep were taken from Mrs. McNeeley's pen, but heard it generally discussed in the neighborhood afterwards. The State rested.

The defense offered no other evidence than the records of marks and brands of Wise county, which showed the mark and brand of the Thompsons to have been recorded in the name of R. W. Thompson, on the sixth day of July, 1885.

The State, in rebuttal, introduced the tax rolls of Wise county, which showed that the defendant rendered ten head of sheep for assessment in 1885, and that R. W. Thompson rendered no sheep for assessment in that year, and but ten dollars worth of property.

County attorney Carswell testified, for the State, that, on the ninth day of July, 1885, he was present in justice Cochran's court, and represented the State in the examining trial of the defendant and William Thompson, charged with the offense now on trial. The original complaint was found to be defective, and as Mrs. McNeeley was not present, witness had T. J. Chitwood to make a new one, upon which the information in the case was filed.    ∘

Cross-examined, the witness testified that William Thompson, jointly charged with defendant, was separately tried at a former day of this term and acquitted.

The State next introduced in evidence the transcript of the

justice's court, showing that the complaint in this case was filed by Mrs. Margaret McNeeley, and that the defendant waived examination.

The motion for new trial raised the question discussed in the opinion.

*J. P. Graham* and *W. A. Bonner*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Hurt, Judge. This is a conviction for theft of sheep, the property of Margaret McNeeley.

Upon the trial, over the objections of defendant, the State read in evidence part of the transcript before the committing court, showing that Mrs. McNeeley made the complaint, and that defendant waived an examination and gave bond, etc. That part of the transcript, under the facts in this case, which showed who made the complaint, was competent. But that part which informed the jury that defendant waived an examination and gave bond was very clearly inadmissible, and should not have been permitted to go to the jury.

We are of the opinion that the evidence in this case is not sufficient to sustain the conviction. (The Reporter will give the evidence in full.)

The judgment is reversed and the cause remanded.

*Reversed and remanded.*