LATTA v. WEISS *et al., Appellants.*

Division One, November 26, 1895.

1. **Reversion**: LEASE: RENT.   A grant of a reversion passes with it all the leases to which the property is subject, including the rents reserved as incident to the grant.

2. **Landlord and Tenant**: ASSIGNMENT OF LEASE: RENT.   Where a lessee, with the landlord's consent, assigns a lease, agreeing that the assignment shall not affect his liability for the rent he remains primarily liable therefor.

*Appeal from   Jackson   Circuit   Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellants.

(1) An assignment of rents alone does not convey the lease under which the note accrues to the assignee, nor indeed does it convey any right, title, or interest in the lease. *White v. Kane*, 52 Mo. App. 300; *Stanley v. Robbins*, 36 Vt. 430; *Beal v. Car Spring Co.*, 125 Mass. 157; *Watson v. Hunkins*, 13 Iowa, 547; Taylor on Landlord and Tenant, sec. 447. (2) This being true, Henwood did not hold the lease from Bouton to Weiss & Ridge, and it was not included in those assigned to Latta. Authorities above cited. (3) A lessee, having assigned the lease by and with the consent of the lessor, and the assignee agreeing with the lessor to pay all rents accruing thereafter, the original lessee becomes thereby merely surety for the payment of such rents. Brandt on Suretyship and Guaranty, sec. 1; *Wendlandt v. Sohre*, 37 Minn. 162; *Bank v. Woods*, 56 Mo. App. 214; *Colgrove v. Tallman*, 67 N. Y. 95. (4) A creditor, having in his hands the means with which he can satisfy a debt, and being notified by a surety of the principal debtor to make use of such means, discharges the surety if he allows such means to escape. *Bank v. Woods*, 56 Mo. App. 214; *Grube v. Stille*, 61 Mo. 473; *Lichtenhaler v. Thompson*, 13 Serg. & R. 157. (5) A clause in a lease binding all property of the lessee for the payment of the rents forms a valid and subsisting lien upon the property of such lessee and is enforcible against such property as against a subsequent mortgage upon the same. *Metcalf v. Fosdick*, 23 Ohio St. 114; *Bank v. Adam*, 34 Ill. App. 159. (6) Such lien is good as in favor of an assignee of the lessors and against an assignee of the lessee. *McKee v. Angleroot*, 16 Mo. 283; *Smith v. Brinker*, 17 Mo. 148; *Will v. Bryden*, 52 Mo. 319; *Barroilhet v. Battelle*, 7 Cal. 454.

*Scammon, Crosby & Stubenrauch* and *John T. Mar-shall* for respondent.

(1) The assignment from Bouton to Henwood of all rentals and other moneys due or to become due under the lease from Weiss & Ridge, and all revenues that may thereafter be derived from the premises, conveys all the rentals thereafter accruing under said lease and the lease itself. A conveyance of all one's right, title, and interest passes a lease, except the reversion. A grant of the reversion passes the rents, unless they be reserved. Rents and reversion make all there is to a lease. Wood, Landlord and Tenant, p. 452; *Biddle v. Housman*, 23 Mo. 397; *Childs v. Clark*, 3 Barb. Ch. 452; Taylor, Landlord and Tenant [7 Ed.], secs. 15, 426, 447; *Hunt v. Thompson*, 2 Allen, 341; *Perrin v. Lepper*, 34 Mich. 291; *Hassler v. Zaller*, 24 Mo. 13; *Demarest v. Willard*, 8 Cowen, 206. (2) The assignment of Henwood to Latta of "all the existing leases now held by me upon said building and improvements, and all my right, title, and interest in and to said leases," was sufficient to convey the rentals and all moneys due or to become due thereafter; otherwise the grant as to the leases and interest in and to the same would be inoperative and unmeaning. Broom's Legal Maxims [6 Am. Ed.], 522; *Cobb v. Fountaine*, 3 Rand. (Va.) 487; *Langston v. Langston*, 2 Cl. & F. Rep. 522; *Cheney v. Curtois*, 13 C. B. N. S. 423; 1 Chitty, Contr. [11 Am. Ed.] pp. 111–117. (3) If the language of the instrument of conveyance from Henwood to Latta is doubtful, then it should be interpreted in the light of the surrounding circumstances, and the evident purpose of the parties and of the construction they gave to it. It was the purpose of it to convey to Latta all Henwood had. After it was made, Latta proceeded to

collect the rents and Henwood made no claim to them.
*Matthews v. Danahy*, 26 Mo. App. 660; *St. Louis Gas-light Co. v. City*, 46 Mo. 121; *Sedalia Brewing Co. v. Sedalia Waterworks Co.*, 34 Mo. App. 49; *Ellis v. Harrison*, 104 Mo. 270; *Long v. Timms*, 107 Mo. 512; *Patterson v. Camden*, 25 Mo. 13; *Brice v. Evans*, 26 Mo. 30.
(4) Where the lessee, as in the case at bar, expressly
covenants to pay rent, he is bound by the covenant
(and that not as a surety, but as a principal), even
though he has assigned his lease with the consent of
the lessor, either verbal or written, and that even
though the lessor has collected rent from the assignee.
Taylor, Landlord and Tenant [7 Ed.], sec. 438; *Whetstone v. McCartney*, 32 Mo. App. 430; *Jones v. Barnes*,
45 Mo. App. 590; *Chorless v. Froebel*, 4 Mo. App. 45;
*Bailey v. Wells*, 8 Wis. 141; *Wall v. Hinds*, 4 Gray,
256; *Wilson v. Gerhardt*, 9 Col. 585; *Oswald v. Fradenburg*, 36 Minn. 270; *Bannette v. Treat*, 91 Cal. 223;
*Grommes v. St. Paul Trust Co.*, 35 N. W. Rep. 820.
(5) This last proposition is particularly applicable
where the assignment itself, as in the case at bar, provides: "It is further agreed that nothing herein contained shall in anywise alter the liability of said Weiss
& Ridge on the covenants contained in the lease, and
they expressly waive any right to notice of any default
or breach of any conditions, covenants, or agreements
contained in said lease."    Courts do not undertake to
make contracts for parties, but permit them to make
their own.    *Webb & Co. v. Ins. Co.*, 14 Mo. 3; *Mitchell Furniture Co. v. Ins. Co.*, 17 Mo. App. 627; *Sexton v. Hull*, 45 Mo. App. 339.    (6) In the absence of a statutory provision to that end, a surety can not require a
creditor to proceed against the principal, and in the
event of his failure so to do, be discharged; nor can he
require the creditor to proceed in a particular way.
The provisions of the Missouri statute do not extend to

leases. R. S. 1889, sec. 8343; Brandt on Suretyship, sec. 208; *Langdon v. Markle*, 48 Mo. 357; *Petty v. Douglas*, 76 Mo. 70; *Conway v. Campbell*, 38 Mo. App. 473; *Findley v. Hull*, 34 Am. Rep. 257; *Smith v. Tegler*, 47 Am. Rep. 358; *Brooks v. Carter*, 36 Ala. 682; *Ruggles v. Holden*, 3 Wend. 216. (7) A landlord can not enforce a lien for rent when no rent is due. There was no rent due here when plaintiff was required to proceed. *Sheble v. Curdt*, 56 Mo. 437.

BRACE, P. J.—On the fourth day of October, 1889, one Henwood, then having a lease for ninety-nine years of the property, leased to one Bouton "all of lot numbered sixty-one, in block four, in McGees addition to Kansas City, with the buildings thereon, for the term of five years from the first of January, 1890. Afterward, on the seventh day of October, 1889, Bouton leased to defendants a storeroom in said building for a term of five years from the first of January, 1890, for which the defendants were to pay by the terms of the lease their proportion of the expenses of heating and lighting, etc., and rent as follows: $300 per month for the first year, $350 per month for the second year, $400 per month for the third year, $450 per month for the fourth year, and $500 per month for the fifth year, installments payable in advance on the first day of each month. By the terms of the lease, it was also provided that the lessees "will not sublet or allow any other tenant to come in with or under them without the written consent of said Bouton, his representatives or assigns; that they will repair all injuries or damages done to the premises by them during their occupancy or pay for the same; that all their property, whether subject to legal exemption or not, shall be bound and subject to the payment of rents and damages thereof."

Defendants went into possession under the lease and paid the rentals as they fell due up to, and including, the installment of March 1, 1891.

On the twenty-sixth of March, 1891, by an agreement in writing of that date, between the defendants, parties of the first part, B. S. King, of the second part, and Bouton, of the third part, duly signed, sealed, and acknowledged by them, the defendants assigned and transferred to said King all their leasehold interest aforesaid; said agreement in writing containing the following provisions:

"Said King hereby covenanting and agreeing, promising and assuming to and with the said Weiss & Ridge, to pay the rent when and as it becomes due, commencing with the first day of April, 1891, and to observe all the stipulations, agreements, and provisions of the said lease and to save the said Weiss & Ridge harmless from any loss or damage by reason of his failure to do so; and the said Bouton does hereby consent to the said transfer of said lease, but not to any further or other transfers, and the said King, in consideration of his consent, does hereby promise and agree to pay the rent reserved in said lease to the said Bouton, his representatives and assigns, and to keep and observe all and singular the conditions, covenants, and agreements in said lease contained.

"It is further agreed that nothing herein contained shall in anywise alter the liability of said Weiss & Ridge on the covenants and agreements contained in said lease and they expressly waive any right to notice of any default or breach of any of the conditions, covenants, or agreements contained in said lease."

King went into possession under this assignment, and thereafter paid the rentals as they fell due to Bouton, until September following.

In the meantime Bouton had leased other portions

of the premises to two other parties, and on the eighth of September, 1891, made a conveyance to Henwood, which, after reciting, first the lease from Henwood to Bouton, then the lease to defendant, and then the two leases to the other parties, proceeds as follows:

"Now, therefore, in consideration of one (1) dollar to him paid by said Henwood and of other valuable considerations, said Bouton hereby sells, assigns, and transfers to said Henwood all the rentals and other moneys due or to become due under any or all of said three last mentioned leases, and also sells, assigns, and transfers to said Henwood all revenues that may be hereafter derived from any or all parts of said premises with the power to collect all rentals, and other moneys hereby assigned, and to that end to institute and prosecute suits in the name of said Bouton, or otherwise, said Bouton to be protected in all such suits from all costs and expenses, and in consideration of the foregoing said Bouton is hereby released by said Henwood from all obligations of said lease from said Henwood to him.

"Said Henwood is also hereby granted the privilege of canceling and terminating at any time he may see fit, without notice, the said lease first herein mentioned.

"Nothing herein contained shall affect the said leases from said Bouton to said Weiss & Ridge * * * in any way other than as an assignment of the rentals, and other moneys becoming due thereunder as herein before specified, and particularly shall not affect the obligations of said lessees under said Bouton and their assigns to fulfill all the terms and conditions set forth in their said leases."

Thereafter, King continued in possession as before, paying the monthly rentals thereafter accruing to Henwood instead of Bouton.

Afterward, on the twenty-first of December, 1891, Henwood, by his deed of that date, conveyed his leasehold interest in the premises to plaintiff; the granting clause thereof being as follows:

"Now, therefore, in consideration of the sum of sixty-two hundred ($6,200) dollars, to me in hand paid by J. M. Latta, of the state of Indiana, the receipt of which is hereby acknowledged, I do hereby grant, bargain, sell, convey and confirm, assign, transfer and set over to said J. M. Latta all my right, title and interest in and to said real estate, together with all improvements thereon, including the benefits to be derived from the party wall contracts, and also all unexpired fire insurance now on said improvements; also all the existing leases now held by me upon said building and improvements, and all my right, title, and interest in and to said leases;

"To have and to hold the same unto the said J. M. Latta, his heirs and assigns, forever."

Thereafter, King paid the monthly rental installments to plaintiff up to and including the rent for March, 1892.

On or about the twenty-eighth of March, 1892, King executed a chattel mortgage on his stock of goods in said storeroom and between that date and the first of April, 1892, the same was removed therefrom. On the thirty-first of March, 1892, defendants served a notice on plaintiff calling attention to the fact that the stock was being moved out of the storeroom by King, and requiring plaintiff to take the proper steps to secure and subject said property to the payment of the rent of said premises.

Thereafter, no further rent being paid, the plaintiff on the twenty-second day of September, 1892, instituted this suit, for the installments due for the months of April, May, June, July, August, and September of

that year, amounting in the aggregate to the sum of $2,525.49. The case was tried before the court without a jury. Judgment for the plaintiff for the sum of $2,656.80, and defendants appeal.

1. Defendants' first contention is, that "plaintiff is not the proper party to maintain an action for the rents accruing under the lease in controversy;" in other words, "that Latta has no right to maintain this action, but that Henwood, if any one, is entitled to the rents sued for." The sole foundation for this contention is the claim that Bouton by his conveyance of the twenty-first of December, 1891, transferred to Henwood only the rental accruing to Bouton under his lease, to defendants, and that the reversion of that lease still remained in him, and that Henwood by his conveyance to plaintiff transferred to plaintiff only his reversion in this leasehold; the right to the rentals issuing out of defendants' lease still remaining in Henwood.

Notwithstanding the admirable ingenuity with which this claim is urged, we can not give our assent to this construction of these instruments, made plausible only by losing sight of the fact that Henwood, at the time that Bouton reconveyed to him, was the owner of the reversion, as between him and Bouton. When Bouton transferred to Henwood all the rentals issuing out of the subleases made by Bouton (the only beneficial interest he had in the leasehold) Henwood became the owner of the whole estate, the right to the reversion, and the right to the rentals. There could be no tangible reversion in Bouton, whose term expired at the same time as did the defendants. To attempt to found any rights upon such a reversion would be simply chasing a shadow.

When the whole assignment from Bouton to Henwood is read in the light of the relations they sustained

to each other, and to the premises, it can not be doubted that it was the intention of the parties that the whole of Bouton's interest in the premises was to be transferred to Henwood, subject, however, to all the rights acquired by Bouton's sublessees in the premises under their several leases from him. Bouton could not have intended to retain any interest in a lease which he authorized the lessor to cancel at any time without notice. The limitations in the following clause of the assignment were evidently intended for the protection of the interest of his sublessees, and not for the protection of any supposed interest retained by him in the premises. Practically, it was a surrender by Bouton of his own lease and a substitution of Henwood to his place as lessor or landlord to Bouton's sublessees.

Henwood being thus possessed again of the whole leasehold for ninety-nine years, subject to these outstanding subleases, and of the right to receive the rental accruing under them by his deed aforesaid, of the twenty-first of December, 1891, conveyed to plaintiff all his right, title, and interest in the premises, together with all the benefits to be derived from all the existing leases held by him upon said building, and all his right, title, and interest in said leases. The leases here referred to are evidently the leases transferred by Bouton to him, and the subleases of defendant and the other two tenants from Bouton, the benefits of which were the rentals accruing thereunder, and the reversion after the expiration of the term of such subleases. It is conceded that this instrument transferred Henwood's reversion in the leasehold, and the rule is that, "a general grant of the reversion passes all the leases to which the property is subject, including the rents reserved, as incident to the grant." 2 Taylor, Land. & Ten. [8 Ed.], sec. 426.

Here we have not only a general grant that would

have the effect of carrying the right to the rental, but special words that could have been used with no other intent than to make the grant have that effect, and Henwood having the right to the rental under his assignment from Bouton, as we have seen, there can be no doubt but the same was transferred to the plaintiff by this conveyance. Such was the construction placed upon these instruments by all the parties interested, including defendants, who seem to have had no doubt that plaintiff was entitled to the rents when they notified him to proceed to the enforcement of their collection, and we are satisfied that this is the correct construction of these instruments, and that plaintiff, having in fact the right of reversion and the right to the rentals, can maintain his action for such rentals.

2. The next contention is that by the assignment of the defendants' lease to King, with the express written consent of Bouton, and the acceptance thereafter by Bouton, Henwood and plaintiff, of King as the new tenant, King became the principal debtor, and defendants became his sureties, liable only in the event plaintiff failed to make the rent out of his principal, and plaintiff as landlord in the lease from Bouton, having the right to enforce the rent against the property of King, which was sufficient therefor, and having permitted the same to escape such enforcement, although notified to proceed against the same, the defendants are discharged from liability for such rent.

This contention overlooks the fact that although King was thus accepted as the new tenant, the defendants, by their own personal covenant, contained in the assignment of the lease to King, agreed in express terms "that nothing herein contained shall in anywise alter the liability of said Weiss & Ridge on the covenants and agreements contained in such lease, and they expressly waive any right to notice of any default or breach of

any of the conditions, covenants, or agreements contained in said lease.'' The parties to the contract having thus in unmistakable terms covenanted against the very consequences urged to flow from the new relations thereby created between them, it would seem useless to discuss those consequences further. It was entirely within the province of the contracting parties to agree that the defendants should remain as before, principally and personally liable for the rentals, notwithstanding the substitution of another party as tenant. They did so contract, and it only remains for the courts to enforce that contract as made. The judgment is affirmed. All concur.