WENDLER v. PEOPLE'S HOUSE FURNISHING COMPANY, Appellant.

In Banc, December 3, 1901.

1. **Negligence: TOOLS: MASTER'S DUTY: ASSUMPTION OF RISK.** The neglect of the duty by the master to use ordinary care in furnishing reasonably safe instrumentalities with which his servants are to work, with the servant's knowledge, does not convert the master's negligence into an assumption of the risk of the employment. In such case the servant's knowledge of the condition is a fact to be considered under the plea of contributory negligence, and when the defense is based on that, it precludes a recovery only when the dan-

ger is so glaring that a man of ordinary prudence, under the circumstances, would refuse to do his master's bidding. And where there is evidence that the master's failure to furnish safe appliances was the result of his order to employees, the question of whether the danger was so glaring and imminent as to make it contributory negligence in plaintiff to continue in his master's service, is a question for the jury.

2. ———: ———: MASTER'S DUTY CONTINUOUS: ASSUMING RISK. The duty of the master to furnish a guard around an elevator, or a light in the room in the floor of which was the unprotected elevator hatchway through which plaintiff fell, was a continuing one, and the disregard thereof for one period, of which the servant knew, did not relieve the master from its performance for another of which he knew little. And the fact that the servant knew for one period during which he worked in the building that the hatchway was left without gates and the room without lights, does not justify the conclusion that he must have known the condition to have been the same during the next period when he was seldom there.

3. ———: GATES FOR ELEVATOR: ORDINANCE: INAPPLICABILITY: IMMATERIALITY. An instruction for plaintiff declared that it was the duty of a manufacturer to have provided a gate or railing to the elevator hatchway in the storeroom where the accident occurred, and that a failure to do so was negligence; and that if the gate was furnished, yet kept open by order of defendant, there was not a compliance with the ordinance requiring such hatchways to be "effectually barred or closed by railing or gates for the prevention of accidents therefrom." The evidence showed that the gate was provided, but habitually kept open by order of the defendant manufacturer. *Held, first,* this leaving of the gate open was the same as if there had been no gate and no pretense of complying with the ordinance, and, hence, the instruction was theoretically correct; *second,* the ordinance was valid, the defendant was obliged to obey it, and was liable for failure to do so; *third,* the ordinance might have been entirely omitted from the case without affecting its merits.

4. Practice: REMARKS OF ATTORNEY: APPEALS TO PREJUDICE. The attorney for plaintiff, in a damage suit against a manufacturing company, in his argument to the jury, said: "Whenever the lawmakers tried to pass laws protecting employees, corporations were up in arms against the law. If the lawmaking bodies pass laws providing for fire escapes, they kick; when they pass laws to put up fences around elevators, they kick." *Held, first,* that if an appeal to the prejudice or passion has carried the jury away from its duty, the trial court

should set the verdict aside, and if it clearly appears by the record that the trial court has failed to do its duty in that regard, the appellate court will interfere; *second,* the trial court is in a better position to know whether the privilege of argument has been abused than is the appellate court; *third,* the quoted remarks of counsel do not indicate that the trial court failed of its duty in doing nothing more than admonishing counsel to keep within the record.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

AFFIRMED.

*O'Neill Ryan* and *Given Campbell* for appellant.

(1) The court should have sustained the demurrer to the evidence as, under the pleadings and evidence, the plaintiff was not entitled to recover for the reasons: *First.* Because the plaintiff had been working at that place and using that elevator for eighteen months prior to the accident; the conditions were the same when he entered the defendant's employ as when he was hurt, and had been the same during the intervening time; he was a man of mature years, the conditions complained of and the risks and dangers incident thereto were obvious, were well known to him, even better than to his master, and, by continuing to work in those conditions without complaint, he assumed the risks incident thereto and can not now complain when they have resulted in injury—and this even though the court should hold there was a violation by defendant of the ordinance pleaded and that this constituted negligence per se. Price v. Railroad, 77 Mo. 511; Spiva v. Osage C. & M. Co., *88 Mo. 68; Alcom v. Railroad, 108 Mo. 97; Fugler v. Bothe, 117 Mo. 493; Junior v. M. E. & P. Co., 127 Mo. 83; Lucy v. Hannibal, etc. Co., 129 Mo. 39; Nugent v. Milling Co., 131 Mo. 254; Holloran v. U. I. & F. Co., 133 Mo. 470; Winkler v. St. L. B. & B. Co.,

Vol 165 mo—34

137 Mo. 394; Doyle v. Trust Co., 140 Mo. 18; Epperson
v. Postal C. T. Co., 50 S. W. 803; Railroad v. Seley, 152 U.
S. 154; Hunt v. Kile, 98 Fed. 53; Iron Co. v. Weiss, 90
Fed. 46; The Saratoga, 87 Fed. 349; Dredging Co. v. Walls,
84 Fed. 428; Pierce v. Clavin, 82 Fed. 552; Carpet Co. v.
O'Keefe, *51 U. S. App. 74; Knisley v. Pratt, *148 N. Y.
372; Marsh v. Chickering, 101 N. Y. 396; Gibson v. Rail-
road, 63 N. Y. 449; (followed in 88 N. Y. 264, and 111
Ib. 554); Horton v. The Vulcan Iron Works, *13 App. Div.
(N. Y.) 508; Gruner v. Brewer, 4 App. Div. (N. Y.) 327;
Feely v. Pearson Cordage Co., 161 Mass. 426; Goodridge
v. Washington Mills Co., 160 Mass. 234; Kleinert v. Kim-
hardt, 160 Mass. 230; O'Malley v. S. B. G. L. Co., *158
Mass. 135; Taylor v. Carew Mfg. Co., *143 Mass. 470; s.
c., 140 Mass. 150; Scharenbraich v. St. Cloud F. W. Co.,
59 Minn. 121; Jenny Electric L. & P. Co. v. Murphy, 115
Ind. 566; Reynolds v. Hindman, *32 Iowa, 146; Willey v.
Mulledy,* 78 N. Y. 315; Disano v. N. E. S. B. Co., 40
Atl. (R. I.) 7; Boyd v. Harris, 35 Atl. (Pa.) 222; Mc-
Donald's Adm. v. N. & W. R. Co., 27 S. E. (Va.) 821;
Bailey on Personal Injuries, etc., secs. 778, 837, 946-8;
Bailey on Master's Liability to Servant, p. 180; Beach on
Cont. Neg., secs. 370, 371; (*Mem*: The cases marked with
an asterisk are cases of violation of a statute). *Second.* Be-
cause the plaintiff, knowing exactly the conditions as to light
existing about the elevator at the time he was hurt, and know-
ing the gate was up, and that according to the unvarying
method of using the elevator, he must look to see if it was at
the landing, and, if not, pull it up or down to that floor, never-
theless walked on to the elevator, and, without stopping to
see if it was there, or turning on the light that hung before
it, walked into the open shaft, and thus by his own carelessness
and negligence directly contributed to the happening of the
accident, and this forbids his recovery; and as this was the
proximate cause, it would make no difference if the court

should hold that defendant violated the ordinance pleaded, and that this constituted negligence per se. Lenix v. Railroad, 76 Mo. 91; Powell v. Railroad, 76 Mo. 83; Butts v. Railroad, 98 Mo. 272; Weber v. Railroad, 100 Mo. 200; O'Donnell v. Patton, 117 Mo. 21; Hogan v. Railroad, 150 Mo. 55; Holwerson v. Railroad, 57 S. W. 770; The Saratoga, supra; Claus v. Steamship Co., 89 Fed. 646; Beach on Cont. Neg., sec. 58. (2) The court erred in admitting the ordinance in evidence for these reasons: *First.* It could not be made the basis on which to rest a civil liability on the part of defendant to plaintiff. Holwerson v. Railroad, 57 S. W. 770; Murphy v. Railroad, 153 Mo. 252; Sanders v. Railroad, 147 Mo. 426; Byington v. Railroad, 147 Mo. 673; Fath v. Railroad, 105 Mo. 537. *Second.* The ordinance did not make the violation negligence, on the contrary, it only fixed and limited the punishment for violation at a certain fine, and hence, was only punitive, and not compensatory. Holwerson v. Railroad, supra. *Third.* The plaintiff failed to show that defendant had been notified by the commissioner of public buildings to erect gates, and until such notice was given, and disregarded for thirty days, there was no obligation to comply with the ordinance, and hence there was no violation thereof by defendant.

*A. R. Taylor* for respondent.

(1) "It is the duty of the master to keep his premises, necessary in the prosecution of his business, in a reasonably safe condition, and if he fails to do so he is liable to the servant for all injuries resulting to him from such defects, precisely as he would be to a stranger affected with the same knowledge of their condition that the servant has, unless such defect arises or is not repaired in consequence of a co-servant. The master owes the same duty in this respect to the servant that he owes to a stranger lawfully upon the premises, and

in either case it is a question of care and diligence on the master's part and a want of proper care and diligence on the part of the person injured." Wood, Master and Servant (2 Ed.), pp. 695, 696, sec. 334; Dayharsh v. Railroad, 103 Mo. 576; Turner v. Haar, 114 Mo. 346; Williams v. Railroad, 119 Mo. 322; Herdler v. Buck, S. & R. Co., 136 Mo. 15. (2) The servant Wendler, upon entering the service of the defendant, assumed the risks and dangers ordinarily incident to the service he engaged to perform. These are risks and dangers which attend the service, when the master performs his duties to his servant. They are such risks and dangers which accompany the work notwithstanding the master performs his duties. But the rule is equally as well settled that the servant does not assume the risk which may arise by reason of the neglect to provide a reasonably safe place and appliances to do the work he engages to perform. The duty of the master as to supplying a reasonably safe place, and reasonably safe appliances "is a continuing duty of the master and a neglect of it is negligence. On entering the employment the servant does not assume the risk of dangers arising from its neglect." Settle v. Railroad, 127 Mo. 343; Railroad v. Spangler, 44 Oh. St. 471; Roesner v. Hermann, 10 Biss. 486; Railroad v. Eubanks, 48 Ark. 460; Hessonger v. Railroad, 191 Ala. 514; Blanton v. Dold, 109 Mo. 76; Settle v. Railroad, supra; Gibson v. Railroad, 46 Mo. 163; Huhn v. Railroad, 92 Mo. 447; Soeder v. Railroad, 100 Mo. 681. (3) That the city has the power to pass an ordinance for the protection of life and limb is not challenged even in the Fath case. It is distinctly asserted by able text writers. 2 Dillon on Municipal Corporations, sec. 713; 2 Shearman & Redfield on Railways, pp. 577, 578, cited by this court in Merz v. Railroad, 88 Mo. 677. And an ordinance *in pari materia* with the one in this case was upheld as a beneficient exercise of the police power to protect life and limb, which resides in a municipal corporation. Bran-

nock v. Elmore, 114 Mo. 59, where the court says: "The disregard of the ordinance was in itself an omission of duty sufficient to justify a verdict for plaintiff against the person who was guilty of the negligent omission." 1 Shearman & Redfield on Negligence, sec. 13; Murray v. Railroad, 101 Mo. 236; Dickson v. Railroad, 104 Mo. 501.

## In Division One.

VALLIANT, J.—William Wendler, the original plaintiff, was a cabinetmaker in the employ of defendant corporation and sued to recover damages for personal injuries sustained by him in falling through an elevator-opening in defendant's establishment.

The building in which defendant conducted its business was on the east side of Broadway in St. Louis, fronting west, and was one hundred and thirty-five feet from front to rear. In the rear forty-five feet on the first floor there was walled off a shipping room, the partition walls of which were composed partly of wood and partly of glass. There was an elevator located in the northwest corner of the shipping room running through openings in the floors from the cellar to the upper stories. The opening was nine feet wide and extended six feet nine inches from the north wall of the building.

There were appliances for four incandescent lights hanging in the room, of the usual size of the electric bulb, one in the southeast corner, one about two feet in front of the elevator, and two on a line with it eastward, the three being about twelve feet apart. The testimony on the part of the plaintiff tended to show that by order of defendant these lights were not lit as a general rule except early in the morning and late in the afternoon or evening, but were turned off during the day, and they were not lit when this accident occurred, and that when the room was occupied with furniture as on that day the natural light was insufficient. The tes-

timony for plaintiff also tended to show that he had been in the employ of defendant as a cabinetmaker eighteen months. The first nine months his work was chiefly in the basement of that building, but for the last nine months defendant had a warehouse on Biddle street and plaintiff's work was there; he was seldom at the Broadway house except to report morning and evening. But on the day of the accident, he was to go to East St. Louis and was at this building in connection with that duty and was ordered to go to the second story, by the elevator, to get a carpet that was to go over the river, and in attempting to obey this order he went into the shipping room to take the elevator and it being so dark he could not see he fell through the elevator-opening into the cellar and suffered serious injuries. The elevator was operated by the various employees who had occasion to use it; plaintiff had often used it and was familiar with its mode of operation. The conditions as to operating the elevator, the lights, etc., were the same at the time of the accident as they were when the plaintiff worked in the building and when he was familiar with it. He had often used the elevator, sometimes turning on the light that hung in front of it and sometimes omitting to do so. The incandescent bulb that hung in front of the opening was three feet six inches from the west partition wall of the salesroom, and one approaching it from the rear of the room, as the plaintiff was doing, was exposed to six feet or more of the opening before he would have reached the bulb to turn on the light, and he testified that he fell before he reached it. In regard to the electric lights in the room, the order to the employees from the defendant's man in charge was that they should not try to see how much light they could consume but how little they could get along with.

There was a gate to guard this opening but the testimony on both sides showed that, by order of the man in charge of the room, the gate was usually left open, or pushed up out

of the way leaving the opening unguarded, and it was so on this occasion.

Over the objection of defendant, the court permitted the plaintiff to read in evidence an ordinance of the city as follows: "The owners, lessees or occupants of any building in the city of St. Louis, in which hatchways or wellholes exist, or shall hereafter be constructed, shall cause the same to be effectually barred or inclosed by railing or gates, or by some other contrivances approved by the commissioner of public buildings for the prevention of accidents therefrom." At the close of plaintiff's case defendant asked an instruction in the nature of a demurrer to the evidence which was refused and defendant excepted.

On the part of defendant, the testimony tended to show that on a bright day, as this was, there was enough natural light in the room to safely do the required work, but that the artificial lights were supplied for use on dark days and that the employees were at liberty to turn on the light when they needed it.

The general theory of the instructions under which the case was submitted to the jury was, that if the defendant did not use ordinary care to see that the room was sufficiently lighted and the opening sufficiently guarded and that in consequence of insufficient light and absence of a guard the plaintiff in discharge of his duties in the service of defendant, while exercising ordinary care, fell into the opening and was injured as complained of, he was entitled to recover. And that though the plaintiff knew, before the accident, that the defendant was maintaining the elevator without being guarded and in a room not sufficiently lighted, yet if the danger to be apprehended therefrom was not such as would seem to an ordinarily prudent person to threaten immediate injury to him in the discharge of the duty he was performing, his continuing in the service under such conditions would not preclude his recovery. At the request of defendant an instruction was given to the

effect that if the gate was habitually kept open and the room insufficiently lighted, and the danger in working there was for those reasons increased and the plaintiff knew it, yet continued in the service, he was to be esteemed as voluntarily assuming the risk and could not recover, to which instruction the court added this qualification, to-wit, unless it should further appear that the danger was "not so obvious and imminent as to threaten immediate injury, and to prevent an ordinarily prudent person from remaining in defendant's service."

There was a verdict for plaintiff for $5,000 and judgment accordingly, from which this appeal has been duly taken. After the rendition of the judgment it was assigned to the plaintiff's wife, and he has since died.

I.    The chief insistence on the part of appellant is that the court should have given the peremptory instruction asked by defendant, on the ground that the plaintiff's own evidence showed that he was entirely familiar with the situation and conditions, that whatever danger there was, was apparent to him, and when he proceeded to work under those conditions he assumed the risk and can not complain. The court tried the case under the rules of law laid down by this court in Settle v. Railroad, 127 Mo. 336, and again in Pauck v. Dressed Beef Co., 159 Mo. 467. In those cases it was shown that it is the duty of the master to use ordinary care in furnishing instrumentalities with which his servants are to work, so as to render them reasonably safe, and that a danger arising from a neglect to do so is not a risk assumed by the servant, and further, that this duty of the master is a continuing duty, and though the servant may know that it has been neglected in the past, the master is not thereby relieved of it, nor does the servant assume the risk of its neglect. That is to say, the neglect of the duty by the master with the servant's knowledge, or even by express contract between the master and servant (Blanton v. Dold, 109 Mo. 75), does not

convert the danger arising therefrom into a risk of the employment assumed by the servant. In such case the servant's knowledge of the condition is a fact to be considered under the plea of contributory negligence, and under that head it precludes a recovery only when the danger is so glaring that a man of ordinary prudence, under the circumstances, would have refused to do his master's bidding.

Defendant's positions in this case are a little inconsistent. Its testimony tended to show that on a bright day, as this was, there was natural light enough in the room to work with reasonable safety without the use of the artificial lights; yet when it faces the fact that the man for want of light fell into the hole, it then says, in effect, that the want of light was so manifest and the danger from the open condition of the gate was so obvious that a man who would try to work at the elevator under those conditions had only his own foolhardiness to blame for any injury he might receive.

It does not follow as a certain conclusion that because the plaintiff knew that the gate was kept open and the light turned off ordinarily, during the nine months when he worked there, that he also knew that the same dangerous practice had continued for the last nine months when he was seldom there. The duty to furnish light and a reasonable guard was a continuing duty, and its disregard for one period did not relieve the master from its performance for the other period, nor of itself render the servant chargeable with knowledge that the practice had continued. The conduct of the master in the two respects complained of seems to have been deliberate and actuated by no other motive than that of economy at the risk of the servant's safety; the orders were to not take time to close the gate, and to see how little electric light they could get along with.

Under the circumstances, the question of whether the danger was so glaring and imminent as to make it contributory negligence in plaintiff to continue in service, was a ques-

tion for the jury and the instructions for plaintiff properly
submitted it.    There was no error in refusing the instruction
for a nonsuit.

II.    It is complained that the first instruction given for
plaintiff assumes a vital controverted fact, to-wit, the insuf-
ficiency of the light at the elevator-opening.    That instruc-
tion is as follows:

"1.    If the jury find from the evidence that prior to
and on the fourth day of September, 1896, the defendant oc-
cupied the premises known as 814 and 816 North Broadway,
mentioned in the evidence, and used the elevator mentioned
in the evidence; and if the jury find from the evidence that
on said day the plaintiff was in the service of the defendant
as a cabinet repairer, that it was in the line of his duty to
ride upon the elevator mentioned in the evidence in the dis-
charge of his duties; and if the jury further find from the
evidence that said elevator passed through a hatchway in the
floor of the shipping room; and if the jury find from the
evidence that the shipping room near said elevator-opening on
said day was dark and insufficiently lighted and that the
sunlight was partly excluded by the piling up of the furniture
therein; and if the jury find from the evidence that the de-
fendant, did not exercise ordinary care in maintaining said
room near said elevator-opening in such condition; and if
the jury further find from the evidence that defendant was
maintaining said elevator-opening in said floor without keep-
ing the guard or rail closed to prevent persons from falling
therein, and sustained injury; and if the jury further find
from the evidence that defendant did not exercise ordinary
care, in maintaining said elevator-hole in said floor without
keeping the guard for protection closed and without having
said room properly lighted; and if the jury further find from
the evidence that on said day the plaintiff was at or near
said elevator-hole for the purpose of using said elevator in the
discharge of the duties of his employment, and that whilst

so near said elevator-opening for said purpose he fell therein and sustained the injuries on account of which he sues; and if the jury further find from the evidence that the plaintiff was caused to so fall into said opening by reason of its being so open, unlighted and unguarded; and if the jury further find from the evidence that the plaintiff knew that said room was insufficiently lighted and that there was no guard or protection kept closed around said elevator opening, and that thereby he incurred some risk in remaining in defendant's service and in discharging the duties of his employment; yet, if the jury find from the evidence that the dangers arising to the plaintiff by reason of said unguarded elevator-opening and said want of light near said elevator, were not so obvious and imminent as to threaten immediate injury, and were not such that an ordinarily prudent person under the circumstances would not have remained in defendant's services and performed the duties plaintiff was hired to perform; and if the jury further find from the evidence that plaintiff was exercising ordinary care at the time of his injury, plaintiff is entitled to recover."

The instruction does not assume the fact but propounds it as a question to the jury under the evidence.

Nor is the instruction at fault for not calling the attention of the jury to the fact that there was an electric light bulb hanging in front of the elevator which the plaintiff might have turned on. That was only one of the many facts in evidence which the jury had to consider.

The point is also advanced that the second instruction singles out and gives prominence to certain facts. The instruction is:

"2. If the jury find from the evidence that the defendant's shipping room at or about the elevator-hole mentioned in the evidence was dark and unlighted; and if the jury further find from the evidence that plaintiff, before his injury, knew that said room was dark and unlighted and that

there was some risk or danger of falling into the elevator-hole by reason of said condition of said room while undertaking to use the elevator in the discharge of the duties of his employment; and if the jury find from the evidence that defendant was maintaining said elevator-opening in said floor without causing the same to be effectually barred or closed by railing, gate or other contrivance for the prevention of accidents therefrom; and if the jury find from the evidence that the plaintiff knew before his injury that defendant was maintaining said elevator-opening without such guard or protection being closed; yet, if the jury further find from the evidence that said condition of said room and elevator-opening and the danger arising therefrom was not such as to threaten immediate injury to plaintiff while in defendant's service in the discharge of the duty of his employment, and was not such that a person of ordinary prudence while exercising care and caution, would not have undertaken to have remained in defendant's service and discharge the duties of his employment, then, the fact alone that plaintiff continued in defendant's service under the circumstances, will not of itself defeat this action."

This instruction was rendered necessary to meet the plea of contributory negligence, and it does not seem to unfairly state the case.

Complaint is made of the sixth instruction which is as follows:

"6. The court instructs the jury that under the pleadings and evidence in this case it was the duty of the defendant to have had the elevator-opening in the shipping room mentioned in the evidence provided with inclosing railing or gate to effectually bar said opening for the prevention of accidents therefrom, and to keep such opening closed by such railing or gate when such opening was not being used, and that a failure to do so, if the defendant did so fail, was negligence upon the part of the defendant. And the court further instructs the

jury that if the defendant did provide such railing or gate, and by its officers or agents authorized to direct and control said railing or gate as to its being open or closed, caused the same to be kept open when said elevator was not being used, then such providing of said gate or railing, was no compliance with the ordinance read in evidence and the defendant was guilty of negligence in that regard."

The effect of this instruction is that it was the duty of the defendant to provide a gate or barrier, as the ordinance required, and a failure to do so was negligence; that if the gate was furnished yet kept open by order of defendant, it was not a compliance with the ordinance.

The evidence showed that the gate was kept open, not accidentally or occasionally, but habitually and by order of defendant's man in charge. Under that condition it was the same in effect as if there had been no gate, and no pretense of complying with the ordinance. The validity of the ordinance in question, the obligation of defendant to obey it, and its liability for failure to do so, are propositions of law clearly established. [Murry v. Railroad, 101 Mo. 236; Brannock v. Elmore, 114 Mo. 59; Shearman & Redfield on Neg., sec. 13.] In the brief for appellant, a quotation is made from the city ordinance showing that it was the duty of the building commissioner to notify persons who had hatchways, etc., to furnish gates or other guards and they were not in default until they neglected for thirty days thereafter to comply with the ordinance. Those provisions of the ordinance do not appear to have been read in evidence and are therefore not properly in the case. But they would be inapplicable anyway because the defendant in fact had a gate that complied with the requirement of the ordinance and therefore a notice to supply such a gate would have been useless. The provisions quoted do not say that the building commission must notify the defendant to keep his gate closed, that is left to the dictates of common prudence. In fact the whole ordinance

might have been dropped out of this case entirely without affecting its merits.

III.    In his argument the plaintiff's attorney said to the jury: "Whenever the lawmakers tried to pass laws protecting the employees, corporations were up in arms against the law. If the lawmaking bodies pass laws providing for fire escapes, they kick; when they pass laws to put up fences around elevators, they kick."

Defendant's counsel objected to the language and requested the court to require the counsel to withdraw it and requested the court to tell the jury not to consider it, but the court only admonished the counsel to confine himself to the evidence, and the incident ended. An argument to the jury should be limited to questions arising under the evidence, but figure of speech, rhetoric, and even anecdote, are not prohibited. An appeal to prejudice or passion should not be allowed. The trial judge having heard all the arguments is in a much better position to know whether an improper influence has been exerted than the appellate court can possibly be with only a fragment of the speech quoted. If the privilege of argument has been abused and an appeal to the passions has carried the jury away from its duty, the trial court should set aside the verdict. And if it should clearly appear by the record that the trial court has failed to do its duty in that particular, this court should grant the relief.

There is, however, nothing in the quoted remarks of the counsel in this instance that indicates that the trial court failed in its duty in this respect.

We discover no error in the record and the judgment is affirmed. *Brace, P. J.,* concurs; *Robinson* and *Marshall, JJ.,* dissent, holding that it was error to have given the sixth instruction which declares that a failure to comply with the city ordinance was negligence. The cause is therefore transferred to court In Banc.

Cambron v. Omaha & St. Louis Ry. Co.

## In Banc.

PER CURIAM: Upon a review of this cause by the court In Banc the foregoing opinion of *Valliant, J.,* in Division Number One is adopted as the opinion of the court, *Burgess, C. J., Brace, Gantt* and *Valliant, JJ.,* concurring therein; *Sherwood, Robinson* and *Marshall, JJ.,* dissent on the ground that it was error in the trial court to have given the sixth instruction, which declares that a failure to comply with the city ordinance was negligence.