JOHN CARNEY, Respondent, v. ANHEUSER-BUSCH
BREWING ASSOCIATION, Appellant.

**St. Louis Court of Appeals, October 1, 1910.**

1. **MASTER AND SERVANT: Injury to Servant: Safe Place to Work: Question for Jury.** In an action for injuries by a servant, who was directed by his superior on a dark, rainy night to do work on the top of a tower thirty feet high, where, because of exuding steam and vapor from numerous coils of steam pipes, he could see only a distance of about a foot, with the aid of a lantern, and a hatchway, leading from the place he was thus assigned to work at, was uncovered and unguarded and no signal light was placed there for his guidance, and in doing his work he fell through the hatchway and received injuries, the question whether defendant was negligent in omitting to guard the hatchway or maintain a light thereat was for the jury.

2. ————: **Safe Place to Work: Duty of Master.** It is the master's duty to exercise ordinary care to furnish the servant a place to perform the task assigned as reasonably safe as the character of the work will permit, and when the master maintains premises in which there are pitfalls and hatchways at or about the place where the servant is set at work, such duty requires some guard or signal of danger to be maintained.

3. **NEGLIGENCE: Contributory Negligence Per Se: Confused State of Mind.** While the law requires that every person conduct himself with that degree of prudence that is usually exercised by an ordinarily prudent man in the same circum

150 App.]                                              (437)

stances, when it appears in proof, beyond peradventure, that one has conducted himself in the presence of a known danger without any regard for ordinary prudence, the court may declare such conduct to be negligent as a matter of law; but an error of judgment occasioned by a confused state of mind is not necessarily negligence.

4. **MASTER AND SERVANT: Injury to Servant: Contributory Negligence: Question for Jury.** In an action for injuries by a servant, who was directed by his superior on a dark, rainy night to work on the top of a tower thirty feet high, where, because of exuding steam and vapor from numerous coils of steam pipes, he could see only a distance of about a foot, with the aid of a lantern, and a hatchway, leading from the place he was thus assigned to work at, was uncovered and unguarded and no signal ligh was placed there for his guidance, and in doing his work he fell through the hatchway and received injuries, and it appeared he was unfamiliar with the conditions that obtained at the top of the tower and was proceeding in a careful manner, according to his best judgment, when he stepped into the hatchway, whether he was guilty of contributory negligence in failing to discover the hatchway immediately before him was for the jury although he had passed through it only five minutes before he received his injuries.

5. **NEGLIGENCE: Contributory Negligence: Jury Question, When.** Where reasonable minds may differ as to whether the plaintiff was exercising ordinary care for his own safety at the time he was injured, or erred in his judgment when acting with due care, the question of his contributory negligence is for the jury.

6. **INSTRUCTIONS: Refusal: Covering Abandoned Issues.** Where an assignment of negligence averred in the petition is not submitted to the jury as a predicate of liability, it is not error to refuse an instruction asked by defendant presenting a theory of defense with respect to such assignment.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*A. E. Watson* for appellant.

(1)  (a)  Plaintiff assumed the risk of the accident and consequent injuries.  (b) Plaintiff was guilty of contributory negligence.  MacGrath v. Transit Co.,

197 Mo. 97; Clancey v. Transit Co., 192 Mo. 615; Pohl-
man v. Car & Foundry Co., 123 Mo. App. 219; Wendall
v. Railroad, 100 Mo. App. 556; Fugler v. Bothe, 117 Mo.
475; Marshall v. Hay Press Co., 69 Mo. App. 256; Stein-
hauser v. Spraul, 127 Mo. 541; Nugent v. Milling
Co., 131 Mo. 241; Roberts v. Telephone Co., 166 Mo.
370; Berry v. Kansas City, 128 App. 374; Fulwider v.
Gas Light & Power Co., 216 Mo. 582; Courter v. Merc.
Co., 118 S. W. 505; Coin v. Lounge Co., 121 S. W. 8.
(2) The court erred in refusing defendant's instruction
No. 2. Coin v. Lounge Co., 121 S. W. 8; Stegmann v.
Gerber, 123 S. W. 1041.

*C. J. Anderson* for respondent.

(1) It is the duty of the master to keep his
premises, necessary in the prosecution of his business,
in a reasonably safe condition, and if he fails to do so
he is liable to the servant for all injuries resulting to
him from such defects. Wendler v. House Furnishing
Co., 165 Mo. 527; Koerner v. St. Louis Car Co., 209 Mo.
141; Curtis v. McNair, 173 Mo. 270; Herdler v. Stove &
Range Co., 136 Mo. 3. (2) When Carney was ordered
(in addition to his regular duties and outside of his
regular employment) to go to the top of the tower and
make an inspection he had a right to presume that
the place was reasonably safe. Wendler v. House Furn.
Co., 165 Mo. 527; Curtis v. McNair, 173 Mo. 270; Herd-
ler v. Buck's Stove & Range Co., 136 Mo. 3; Koerner v.
St. Louis Car Co., 209 Mo. 141. (a) The doctrine
of assumed risks does not apply to the case at bar.
Garci v. Construction Co., 124 Mo. App. 709; Curtis v.
McNair, 173 Mo. 270. (b) Plaintiff was not guilty
of contributory negligence. This question was sub-
mitted to the jury by proper instructions and decided
adversely to the defendant. Garci v. Construction Co.,
supra; Curtis v. McNair, 173 Mo. 270; Wendler v
House Furnishing Co., 165 Mo. 527. (3) The court

properly refused to give defendant's instruction No. 2 to the jury. Coin v. Lounge Co., 121 S. W. 1; Garci v. Construction Co., supra; Wendler v. House Furnishing Co., supra.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the alleged negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal.

The injuries complained of were received as a result of falling through a hatchway on the top of a tower maintained by defendant in connection with its brewery. The tower in question is a square structure of concrete. It is said to be thirty feet in height, thirty-four feet square and used by defendant for the purpose of cooling water employed in manufacturing artificial ice at the brewery. Within the tower there are some large vats and it is to be inferred from the evidence that water, after being heated, is transmitted through pipes to the top of the tower, from whence it is dripped into the vats below for the purpose of cooling, but with this matter we are not concerned, except for the purpose of understanding the general situation. The top of the tower is covered with concrete and there is a concrete cornice on all four sides, which extends out about three feet from the tower. On all sides and at the extreme extensions of this cornice there is a concrete wall or coping, which rises to the height of about four and a half feet. It thus appears that the top of the tower consists of an open space about forty feet square, which is inclosed on the four sides by the coping referred to, four and a half feet high. This open space on the top of the tower is divided into four parts by two concrete walls which run crosswise from north to south and east to west about the center of the tower and they, too, are about four and a half feet high. In each of these four sections there are numerous pipes and coils of steam pipe, through which the

heated water passes, and from which it is dripped to certain troughs below. There are eight valves in connection with the several steam pipes, which it seems are regulated at different times, and two of these are in each one of the four sections on top of the tower. At times it is necessary for an employee to go to the top of the tower and adjust or readjust the several valves mentioned. The only means of ingress and egress to and from the top of the tower is an iron ladder built on the north side of the tower, the top end of which passes through a hatchway in the concrete cornice above. One desiring to reach the top of the tower from below must ascend this ladder and pass through the hatchway twenty-one inches by twenty-eight inches in dimensions in the cornice. In other words, the hatchway is through the cornice from below to the floor of the tower above. At the time plaintiff received his injury, by falling through this hatchway, it was wholly unguarded and there were no signals, such as lights, indicating where it was located.

Plaintiff was in defendant's employ, his occupation being that of an oiler of machinery in the engine room, and he was entirely unacquainted with the top of the tower or the conditions which there obtained. Defendant's engineer, having charge of the engines, was plaintiff's immediate superior and directed him to go to the top of the tower for the purpose of adjusting the valves in connection with the steam pipes before referred to. It was in the month of December and after dark, the time being about seven o'clock in the evening. Besides, it was raining and the night was very dark. Plaintiff took an ordinary lantern with him, proceeding up the ladder and through the hatchway to perform the task as directed. After having reached the top of the tower, he passed over one of the division walls thereof, by means of certain steps constructed for the purpose, attended to the valves in

one of the sections and wandered about among the coils of pipe and over the walls, to the end of looking after the other valves. He says in his testimony that the conditions, because of the rain and vapor and steam exuding from the pipes, was such as to obstruct the light from his lantern, so that he could see only about a foot away. Plaintiff says, too, that as he had never been on top of the tower before, he had no knowledge of the walls which divided the four sections; that is to say, he was under the impression there were but two sections, whereas there were four. It is to be inferred from his testimony that because of his unfamiliarity with the situation, the rain, darkness and exuding steam and vapor, he became confused as to his whereabouts while performing the task; for he could not see more than a foot away from his lantern in any direction. While thus engaged and in passing from one portion of the tower to another, he fell through the hatchway from whence he came upon the tower only five minutes before. As a result of the fall, he received severe and permanent injuries.

The petition alleges defendant was negligent in failing and omitting to provide either some kind of a guard about the hatchway or a light thereat by which it could be located, and further that it was negligent in sending plaintiff, an inexperienced person, to perform the task assigned on a dark night without instructions as to the dangerous condition of the hatchway. It may be said of the latter assignment of negligence that it seems to have been abandoned on the trial, for it was not referred to the jury in the instructions as a predicate of liability.

The court submitted the case to the jury as though defendant was remiss in its obligation to exercise ordinary care for the safety of its servant, if the jury believed an ordinarily prudent person would erect and maintain some sort of a barrier about the hatchway or would maintain a light or other warning signal

thereat, and defendant's failure to do so operated proximately to plaintiff's injury while he was exercising ordinary care on his part.    There is no complaint on appeal as to the instructions given, but the argument is that in the circumstances of the case defendant was not negligent in omitting to either guard the hatchway or maintain a light thereat.    It is said that a place such as this is visited so infrequently by defendant's employees that no such duty should obtain against the defendant.    We believe this argument to be unsound, for it appears that employees were required to visit the top of the tower frequently for the purpose of performing the identical task assigned to plaintiff on the occasion in question.    It is in evidence, too, that the factory operated both day and night, and it is to be inferred that an employee was as likely to be sent to the top of the tower in the darkness of night as well as in the day.    At any rate, plaintiff was directed by his superior to go there on an exceedingly dark and rainy night and wander around through exuding steam and vapor among numerous coils of steam pipe.    The place where he was thus assigned to work was thirty feet above the ground and the uncovered and unguarded hatchway was in the very floor on which he was required to walk.    There can be no doubt that it is the duty of the master to keep his premises necessarily used in the prosecution of his business in a reasonably safe condition, and if he fails to do so, he is liable to his servant for all injuries resulting to him from such defects precisely the same as he would be to a stranger affected with the same knowledge of their condition that the servant has, unless such defect arises or is not repaired in consequence of the negligence of a co-servant.    [Wood on Master and Servant, sec. 334.]    It is the duty of the master to exercise ordinary care to the end of furnishing the servant a place, as reasonably safe as the character of the work will permit, to perform the task assigned, and when

employers maintain premises in which there are pitfalls and hatchways at or about the place where the servant is set at work, the obligation referred to requires that some guard or signal of danger should be maintained.    [Wendler v. People's House Furnishing Co., 165 Mo. 527, 65 S. W. 737; Irmer v. St. Louis Brewing Co., 69 Mo. App. 17; Schultz v. Moon, 33 Mo. App. 329.]

It may be that it was impractical to maintain a fence or guardrail about the hatchway, but no reason appears why a small light should not have been placed there for the guidance of such employees as were directed to move about on this high and dangerous place under the cover of night, in the midst of escaping steam and vapors which exuded from the pipes.    It would seem that an ordinarily prudent person should take some reasonable precautions in the circumstances referred to, to the end of obviating the dangers which inhere in a hatchway constructed in the very floor of a place thirty feet above the ground.

But it is said if defendant was negligent plaintiff should be denied a right of recovery for the reason his own negligence contributed directly to his injury. The argument goes to the effect that plaintiff, having been furnished with a lantern, must have been careless in not discovering the hatchway immediately before him, for he knew it was in the floor uncovered and unguarded, having passed through it only five minutes before. The statement of the proposition suggests more or less persuasive reasons for the argument advanced, but when it is viewed in all of the circumstances of the case, we believe plaintiff's negligence should not be declared as a matter of law. One should not be declared negligent as a matter of law merely because he was possessed of knowledge of the hatchway which occasioned his injury unless it appears that his conduct was so utterly reckless for his own safety that no two reasonable minds could differ thereabout. The law requires that plaintiff

should conduct himself with that degree of prudence only which is usually exercised by an ordinarily prudent man in the same circumstances. [Garaci v. Hill O'Meara Construction Co., 124 Mo. App. 709, 102 S. W. 594; Wendler v. People's House Furnishing Co., 165 Mo. 527, 65 S. W. 737.] When it appears in the proof beyond peradventure that one has conducted himself in the presence of a known danger without regard whatever for ordinary prudence, the court may declare such conduct to be negligent as a matter of law as it is obvious to one and all alike that reasonable men would not differ on the fact that he was careless. [Garaci v. Hill O'Meara Construction Co., 124 Mo. App. 709, 102 S. W. 594; Berry v. Missouri Pac. R. Co., 124 Mo. 223, 25 S. W. 229; Deitring v. St. Louis Transit Co., 109 Mo. App. 524, 541, 85 S. W. 140.] But an error of judgment occasioned by a confused state of mind is not necessarily negligence. It appears plaintiff was an entire stranger to the general situation which obtained on the top of the tower. The night was exceedingly dark and a rain was falling, besides there was considerable vapor and steam arising from the pipes which operated to obstruct the dim light from the lantern which he carried. No one had instructed him as to the arrangement on the top of the tower and he supposed there was but one wall dividing it into two parts instead of two walls separating it into four sections. It is clear enough from the testimony that because of these conditions and his unfamiliarity therewith plaintiff became confused, and, instead of conducting himself without ordinary prudence, was proceeding in a careful manner according to his best judgment when he stepped into the hole thus obscured by the darkness, vapor and steam. It is obvious that reasonable minds may differ in the circumstances related as to whether or not plaintiff was exercising ordinary care for his own safety at the time he fell to his injury, or erred in his judgment when acting with due care. In these circum-

stances, the question of contributory negligence is always for the jury.

The court refused to instruct at defendant's request that the law imposed. no duty on the defendant to warn plaintiff of obvious dangers or dangers known to him, and complaint is made here of this refusal. While the proposition of law involved is sound enough the matter is wholly unimportant on the present record for the allegation of negligence touching the failure of defendant to instruct or warn plaintiff about the danger in the hatchway was not submitted to the jury as a predicate of liability. Indeed, this allegation of negligence seems to have been abandoned by the plaintiff, for it is not so much as referred to throughout the case except in defendant's instruction refused. This allegation of negligence having been abandoned, there is no error in the court's refusal of defendant's instruction. The judgment should be affirmed. It is so ordered. All concur.