## LEE, Respondent, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, May 2, 1905.

1. **MASTER AND SERVANT: Safe Appliances: Duty of Master.** The duty of a master to use reasonable care to furnish his servants with reasonably safe appliances is a continuing one and imposes the duty of reasonable care to keep such appliances in a reasonably safe condition.

2. **————: Assumption of Risk: Risks Incident to Employment.** A servant by his contract of employment assumes the risks which are ordinarily incident to the employment in which he engages.

3. **————: ————: Extraordinary Risks.** In addition to the risks ordinarily incident to the employment, the servant, by entering or continuing in the service, after knowledge of defective appliances, assumes the risks incident to such defects.

4. **————: ————: Latent Defects.** Hidden dangers which might have been discovered by ordinary diligence on the part of the master are no part of the risks assumed by the contract of employment, because the servant can not assume a risk of which he is ignorant.

5. **————: ————: ————: Inspection.** It is not the duty of a servant to search for latent defects in the machinery and appliances furnished him, for he has a right to assume that the master has discharged his duty of inspecting such appliances.

6. **————: ————: ————: Ordinary Risks.** The servant assumes the risk of such latent defects as could not be discovered by the exercise of ordinary care on the part of the master, because they are treated as risks ordinarily incident to the employment.

7. **————: ————: ————: Knowledge of Servant: Ordinary Care.** The risks not ordinarily incident to the employment, which the servant assumes, are only such as he knew and appreciated, and such as were so obvious as to justify a presumption of knowledge; he is not charged with the assumption of such risks as he might have known by the exercise of ordinary care.

8. **————: ————: ————: Jury Question.** Where a section hand, while running a handcar, was injured by the sudden stopping of the car on account of the unexpected locking of the cogs, and, in an action for the injuries caused thereby, the evidence

showed that he knew the cogs were tight and pulled heavily, whether the defect was so obvious as to charge him with having assumed the risk of the injury which he received, was for the jury.

9. ———: ———: Contributory Negligence. Nor could the servant in such case be charged, as a matter of law, with contributory negligence on the ground that the danger was so obvious as to threaten immediate injury, and the question of contributory negligence was properly submitted to the jury.

10. ———: ———: ———. The servant in such case was not guilty of contributory negligence in failing to use the brake, where the evidence showed that he had no sufficient warning to use it, and where it did not appear that its use would have prevented the injury.

11. ———: Declarations of Agent. In an action by a section hand for personal injuries, statements made by the section foreman in explanation of the accident which caused the injuries, were improperly admitted in evidence as admissions against the defendant.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*L. F. Parker* and *Moses Whybark* for appellant.

(1) Plaintiff assumed the risk when he used the handcar, and the court erred in not sustaining the demurrer to the evidence offered by defendant at the close of plaintiff's case and again offered by it at the close of all the evidence in the case. Cordage Co. v. Miller, 63 L. R. A. 551, 126 Fed. 495; Harff v. Green, 168 Mo, 309, 67 S. W. 576; Roberts v. Tel. Co., 166 Mo. 370, 66 S. W. 155; Epperson v. Tel. Co., 155 Mo. 372, 50 S. W. 795, 55 S. W. 1050; Nugent v. Milling Co., 131 Mo. 245, 33 S. W. 428; Lucey v. Oil Co., 129 Mo. 32, 31 S. W. 340; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102; Junior v. Electric Co., 127 Mo. 83, 29 S. W. 988; Thomas v. Railway, 109 Mo. 198, 18 S. W. 980; Going v. Railway, 37 Mo. App. 232; McDermott v. Railway,

87 Mo. 295; Price v. Railway, 77 Mo. 511; Rains v. Railway, 71 Mo. 164; Browning v. Kasten, 80 S. W. 354; Dean v. Woodenware Works, 80 S. W. 292; Markey v. Railway, — Mo. —; Kuhn v. McNulta, 147 U. S. 238; Valley Ry. Co. v. Keegan, 31 C. C. A. 261, 87 Fed. 849; Reed v. Stockmeyer, 20 C. C. A. 381, 74 Fed. 186; 1 Labatt on Master and Servant, sec. 274a, p. 643; Covey v. Railway, 86 Mo. 635; Connolly v. Press Co., 166 Mo. 467, 66 S. W. 268; 14 Am. & Eng. Ency. Law (1 Ed.), 845; Railway v. Eddy, 72 Ill. 138. (2) For the same reason as stated in point numbered one, the demurrer ought to have been sustained because of the contributory negligence of the plaintiff. He had charge of the brake on the car, and its speed was under his full control, and he made no effort to check it, which he testifies he could easily have done with his foot. He saw, and could see the danger in the handcar, and knew it; it was not latent, but obvious, and glaring, and he fully appreciated its danger. No one compelled him to use it, or go on the mission he was when injured. The danger of the handcar was apparent and threatening, all of which was familiar to the plaintiff and his co-employes. Under the undisputed facts in this case he was guilty of concurring negligence, and the law will refuse him that relief which otherwise he might be entitled to. Musick v. Packing Co., 58 Mo. App. 331; Benham v. Taylor, 66 Mo. App. 308; Marshal v. Hay Press Co., 69 Mo. App. 256; McGhee v. Bell (Ky.), 39 S. W. 823; Fugler v. Bothe, 117 Mo. 474, 22 S. W. 1113; Steffon v. Mayer, 96 Mo. 420, 9 S. W. 630; George v. Mfg. Co., 159 Mo. 333, 59 S. W. 1097; Hudson v. Railway, 101 Mo. 14, 14 S. W. 15; Henderson v. Kansas City, 177 Mo. 477, 76 S. W. 1045; Dowling v. Allen, 102 Mo. 213, 14 S. W. 751; Dowling v. Allen, 74 Mo. 13. (3) The court erred in permitting Joseph Baxter, a witness for plaintiff, to testify to the conversation had with Corbett, the section foreman, in which he detailed how the accident occurred. The statement was no part of the *res gestae.*

Lee v. Railroad.

The witness was asked to tell the jury if at any time Corbett remained foreman he told the witness how the accident occurred, and over objection of defendant the court permitted the witness to state the conversation had with Corbett relative to it. Devlin v. Railway, 87 Mo. 545; Rogers v. McCune, 19 Mo. 557; Smith v. Railway, 91 Mo. 58, 3 S W. 836; Barker v. Railway, 126 Mo. 143, 28 S. W. 866; State ex rel. v. Givens, 75 Mo. 516; Ruschenberg v. Railway, 161 Mo. 70, 61 S. W. 626.

*Edw. D. Hays* for respondent.

(1) Plaintiff assumed the risk naturally incident to his employment, but could not assume the risk of danger arising from defendant's negligence in failing to repair a recognized defect in the car. Cole v. St. Louis Transit Co., — Mo. ——; Browning v. Kasten, 107 Mo. App. 59, 80 S. W. 354; Pauck v. Beef Co., 159 Mo. 467, 61 S. W. 806; Weldon v. Railway, 93 Mo. App. 668; Thompson v. Railway, 86 Mo. App. 141; Fisher v. Lead Co., 156 Mo. 479, 56 S. W. 1107; Duerst v. Stamping Co., 163 Mo. 607, 63 S. W. 827; Adolff v. Bakery Co., 100 Mo. App. 208, 73 S. W. 321; 1 Bailey's Personal Injuries, sec. 469; Dean v. Woodenware Works, 106 Mo. App. 167, 80 S. W. 292. (2) The plaintiff had no knowledge that the car was about to derail until its front end was lifted clear of the track. They were going at a very moderate speed—traveling at a rate entirely in keeping with the condition of the car. There was nothing apparent to call for the use of the brake until the wreck was actually occurring. Then it was too late to use the brake. "One is not chargeable with negligence because when exposed to sudden danger he does not adopt the best course to avoid injury." Dickson v. Railway, 124 Mo. 140, 27 S. W. 476; Ephland v. Railway, 51 Mo. App. 147. (3) "Different conclusions might have been drawn from the evidence. It was proper to

overrule the demurrer and submit the question of fact to the jury." Schmitz v. Railway, 46 Mo. App. 386; Myers v. Railway, 59 Mo. 223; Whalen v. Railway, 60 Mo. 323. "Though the plaintiff was guilty of some negligence which remotely contributed to the injury, yet if the defendant could, by the exercise of ordinary care and prudence, have prevented it, he is liable." Mathews v. Elevator Co., 59 Mo. 474; Myers v. Railway, 59 Mo. 233; Smith v. Railroad, 61 Mo. 588; Whalen v. Railroad, 60 Mo. 323; Pinnel v. Railroad, 49 Mo. App. 170; Hanlon v. Railway, 104 Mo. 381, 16 S. W. 233; Reardon v. Railway, 114 Mo. 384, 21 S. W. 731; Sullivan v. Railway, 117 Mo. 214, 23 S. W. 149. (4) The court did not err in permitting Joseph Baxter, a witness for plaintiff, to testify to statements by Corbett to him concerning the accident. The evidence all discloses that Corbett was the foreman in charge of the section gang. In its relation to plaintiff, Corbett stands in the position of defendant. He was vice principal. McLachlin v. Barker, 64 Mo. App. 511; Bergman v. Railway, 104 Mo. 77, 15 S. W. 992.

### STATEMENT.

The plaintiff, a section hand in the employ of the defendant railroad on its section in Cape Girardeau county, was injured October 26, 1903, by the derailment of a handcar on which he and two other laborers and Corbett, the section foreman, were riding in their line of duty. His testimony in substance was that he had been employed on different railroads as a section hand for twelve or thirteen years and on defendant's section for some months; that on the day of the injury Mr. White, the roadmaster, was with the section gang and upon his desiring to leave, a couple of the hands came to plaintiff with an order from the foreman to put on the handcar, which they did, and pumped the car up to where the foreman and roadmaster were, whereupon

plaintiff asked the foreman if he wanted him to go along and the foreman replied: "Get on and come with us," which he did, in company with the foreman and the two laborers, Hudson and Lamb. They ran the car up the road for some distance, possibly two or three miles, when the roadmaster signified his intention of getting off and walking from there. Upon leaving the car, the roadmaster directed the foreman to go back to his men. They then started to return to their work. Corbett, the foreman, and plaintiff were behind the front handle facing the direction the car was moving; Lamb and Hudson were aft of the rear handle facing the same direction. All were engaged in pumping the car. The car was being propelled carefully at a rate of speed about equal to twice as fast a man could walk. After having progressed thus for a mile or more, the handcar suddenly derailed and the plaintiff was precipitated head foremost over the handle at which he was working and thrown with the side of his head against the track rail, thereby bruising the side of his head, injuring his arm, shoulder and leg and inflicting severe and permanent injury to his ear, from the effects of which his hearing is greatly impaired. The handcar was of the usual pattern and could be propelled with the gearing either in the front or in the rear. It was the custom to propel this one with the gearing foremost. The car was propelled with a lever and two handle bars. The two men stood, one at either end of each handle, and by means of pumping up and down, the gearing of the car was caused to rotate. An upright, called the pitman, connected with the lever bar which lever bar was on a pivot and in which the handles were. The pitman was by means of what was called the gooseneck, connected with a large or bull wheel in which were cogs. By means of the pumping up and down of the handles, the pitman connected with the lever bar which was, by means of the gooseneck, connected with the bull wheel, caused the bull wheel to revolve, and the cogs therein fitted into

other cogs on the small wheel or pinion; the pinion being stationary near the center of and on the foremost axle of the car, would cause said axle to revolve with each revolution of the pinion. The two carwheels on said axle were, or should have been stationary thereon. They, of course, would revolve with the axle and the car was thus propelled either forward or backward as desired. The subjoined plate No. 1 will show a side view of the handcar, the bull wheel and pinion with the cogs therein, the gooseneck, pitman and side view of the lever bar, also the footbrake on the side of the car. Plate No. 2 will show a top view of said car, that is, the lever bar in which the handles at either end of the car were fastened therein crosswise of the car. The cogs of the bull wheel and pinion were defective in that they were tight and rigid in their bearing and would bind one upon the other to some extent at times when the car was in motion. The car had been in charge of the section gang about a week, had recently come to them from the shops. Plaintiff knew that its gearing was defective in that it would bind and pull heavy at times. He also knew that the left front wheel of the handcar was loose on the axle when it should have been affixed stationary thereon and that it would play back and forth lengthwise on the axle to some extent, but not enough to permit the wheel to get off the rail. Also that the flanges on some of the wheels were broken and not in good order and says that he had been a little afraid of the car on account of the looseness of the left fore wheel and had considered the car somewhat dangerous from that defect if run at a rapid rate of speed but did not consider it dangerous if run at the rate of speed it was being propelled on the occasion in question. The injuries did not result however from the defective left fore wheel nor from the defective flanges on the wheels but resulted from the defective gearing or defective cogs on the bull wheel and pinion. Plaintiff said of the defect which caused the injury: "I could not say that I considered that

TOP VIEW OF HAND CAR

Lee v. Railroad.

SIDE VIEW OF HAND CAR

anything dangerous for the reason I had never seen an accident occur from a thing like that. I really had never seen a car put down as tight as that was. I could not say that I considered that a dangerous defect." While the car was moving along as above indicated, the cogs in the bull wheel and pinion suddenly and without warning became locked at a time when the rear handle bar was down and the foremost handle bar was up; therefore, as the men at the rear handle bar, with the usual force, lifted on their handle, instead of the bull wheel and pinion revolving as they should have done and propelled the car forward, they being locked, the front end of the car was raised and veered off of the track, causing the injury. Plaintiff said: "The first sensation I had was—I was pulling on the right side; the car swung to the right, then veered back to the left, and I started intending, that is, my thoughts went that way, I don't know whether I made any effort physically or not, to get on the brake. I was riding on the brake side of the car. My thoughts were that I would get on the brake and that would turn the car back straight on the track or check it, but when I found myself I was on the track. I was pitched off the car. I do not remember how far it threw me nor how long I lay there, but that was my thought and immediately I was thrown on the track." The brake was what is usually known as a footbrake and could have been brought into use by plaintiff placing his foot thereon and pressing it down.

Upon cross-examination plaintiff testified that he had been employed some as a section foreman and was an experienced section man and familiar with handcars; that the car was running at the time of the accident much slower than cars are usually run; that it was being operated with care; that he had seen nothing before the accident from the defective cogs which appeared dangerous to him from that cause if the car was operated at a moderate rate of speed, as it was.

Plaintiff introduced several of his colaborers on the section who testified in the main to the same state of facts above set out, and while a number of the witnesses on the part of plaintiff stated on cross-examination that they had considered the car dangerous, that none of them seemed to consider it dangerous in that the cogs of the bull wheel and pinion which brought about the catastrophe in this case were defective sufficiently to cause a derailment of the car running at the rate of speed shown in the evidence. The evidence disclosed that the car, taken all in all, was old, worn and defective; the flanges were broken on certain wheels; the looseness of the left front wheel and the defective working of the cogs on the bull wheel and pinion, the sum total of all of which the witnesses generally pronounced apparently dangerous for use, but all seemed to agree that the defective gearing was not openly and obviously dangerous. They all agreed also to the fact that the looseness of the left front wheel of the car in no way contributed to this injury and both those who spoke from personal knowledge as well as those who testified as experts, agreed that plaintiff's injuries resulted from the sudden and unexpected locking of the cogs of the two wheels mentioned which was occasioned because of the fact that the meshes or cogs of said wheels did not work together because of the extreme worn out condition of one of said wheels and the newness of the cogs on the other.

The plaintiff's amended petition alleged the negligence as follows: "That the two cogwheels in the gearing of said handcar, commonly called the bull wheels and pinion, were defective in that they were so tight and close and rigid in their rolling and bearing upon each other that they would hitch and bind and interfere and refuse to turn one upon the other; and that when such handcar was being propelled along the track and such wheels would hitch and bind and interfere and refuse to turn one upon the other, the movement of

the lever and the pitman on said handcar would lift the front end of the handcar off of the track and thus would cause the said handcar to become derailed.

The answer consisted of a general denial and pleaded separately that the plaintiff had knowledge of the defects of the car and therefore his assumption of the risk in using it and that he was guilty of such contributory negligence as would preclude his recovery.

The replication was a general denial.

The court permitted plaintiff, over the objection and exception of defendant, to introduce one Baxter, who gave in evidence that some time after the injury to plaintiff, defendant's section foreman, Corbett, had stated to him that said injuries resulted from a crippled and defective car, that is, the loose wheel and the tight gearing. At the conclusion of the evidence on the part of plaintiff, the defendant requested the court to peremptorily instruct the jury that the finding should be for defendant on the pleadings and the evidence. This the court declined to do. The defendant requested this same instruction at the conclusion of the whole case which was again refused by the court. Defendant excepted. There were five instructions asked and given at the request of plaintiff and none refused. There were six instructions given on behalf of defendant and none refused other, that the two peremptory instructions above mentioned. The verdict was for plaintiff and defendant appealed. There is no criticism in this court on any of the instructions given. Appellant's chief complaint is of the action of the trial court in refusing the peremptory instructions requested by it. There are other errors assigned which it is unnecessary to notice.

NORTONI, J. (after stating the facts.) Appellant contends that inasmuch as it appears by respondent's testimony he had continued in the service without complaint a whole week with knowledge of the defective gearing of the handcar in question, this brings the case

within the rule pertaining to obvious or seen dangers, therefore he should have been nonsuited at the trial for the reason that he had assumed the risk; that the trial court having overruled its demurrer to respondent's case, this court should declare as a matter of law that respondent assumed the risk notwithstanding his testimony that he had never seen a car derailed from a like cause and notwithstanding his testimony that he did not consider the car dangerous for use because of said defective gearing if operated at the rate of speed it was being operated when the accident befell him. In other words, appellant asks this court to declare as a matter of law that because respondent had seen and knew of the defect in the gearing because such defect was patent and obvious to him for a week, its immediate and imminent danger was patent and obvious to him also and further that he knew, understood and appreciated such immediate and imminent danger.

It is a difficult matter, indeed, for a court, sitting at long range from the site of the injury and with naught before it save the cold record, to look into the senses of the respondent and say that he knew, that he understood, that he appreciated, the danger which lurked in the defective gearing and which finally befell him therefrom, when respondent himself says that he did not appreciate such danger.

We will endeavor to dispose of the matter in accordance with the rules of law as enunciated and settled in this State by the courts of last resort in passing upon cases of like kind, and this brings us to the point of discovery: What is the law?

Those of the profession, either on the bench or at the bar, who have had occasion in the past to investigate the adjudications in Missouri upon that department of the law, treated of as assumption of the risk, will have discovered a wonderful conflict, and those who may in the future be called upon to examine the cases in search of precedents, will no doubt be able to find able

and well-considered opinions by learned judges which can be used as authority on either side of pending questions arising in this branch of our jurisprudence. It seems that many of the cases have so commingled and confounded the principles of the law of contributory negligence with that pertaining to assumption of risk that scarcely a hope of its disentanglement remains. Judge Thompson in his work on Negligence, vol. 4, sec. 4611, points out the distinction in apt and appropriate illustration as follows:

"Many of the earlier and some of the later decisions confuse the two subjects of an acceptance by the servant of the risk of employment and his contributory negligence. The two subjects lie close to each other and in some cases blend; but in other cases they are distinct subjects. Neverless, the judges frequently use the words 'contributory negligence' where they really mean an acceptance of the risk. In other instances they use the words 'an acceptance of the risk,' where they really mean contributory negligence. Let us illustrate this by the everyday accident connected with coupling cars. In order to make a coupling the cars must be thrust together either by a locomotive, or by a propulsion called 'kicking' or 'shunting' or by gravity. There is consequently always danger to the brakeman in the operation. If, in making the coupling, he accidently, and without negligence, slips and falls and passes under a wheel, his injury is ascribed to one of the ordinary risks of employment, which risk he has accepted, and no damages can be recovered for it. But if, instead, of using the coupling stick furnished him by the railway company, he undertakes to make the coupling with his hands and in the operation gets his hand crushed, this is contributory negligence and consequently no damages can be recovered. The distinction between the two cases is that in the former the brakeman was not guilty of negligence at all; consequently the expression 'contributory negligence'

could not properly be applied to his act, but what he suffered was from a mere accident attending the known danger, the risk of which he had assumed; whereas in the latter case his own negligence and rashness brought upon him the injury he suffered."

As pointed out by Judge GOODE in Adolff v. Columbia Pretzel & Baking Company, 100 Mo. App. 207, 73 S. W. 321: "The defense of assumption of risk. . . must be founded on contract and treated by the principles of contract law or if there was no contract relationship between the parties which included the fatal hazard," then it rests on said maxim, *volenti non fit injuria,* which expresses assent as well by other methods as by contract. And again, "The two defenses of assumption of risk and contributory negligence are unlike because of the different states of mind in which they are rooted. It is palpable that an act done willfully and upon full information is not done negligently and this distinction is recognized throughout the law of torts. Negligence is the result of inattention or oversight whereas consent to risk implies knowledge of the danger of the act to be performed and the perfomance of the act understandingly and without constraint." [Dean v. St. Louis Woodenware Co., 106 Mo. App. 167, 80 S. W. 292.]

The distinction is pointed out and treated fully in Bailey on Personal injuries, vol. 1, sec. 948 et seq. The two doctrines have been so thoroughly and completely confounded in Missouri that it is an absolute impossibility to harmonize the authorities. This is true to such an extent that the learned author of a very able and instructive note to be found in 49 L. R. A., at page 44, introduces the subject in the following language: "The Missouri decisions upon the disabling effect of the servant's continuance to work with knowledge of abnormal conditions produced by the master's breach of duty are so extraordinarily conflicting that it will be convenient to review them separately," and we find that Bailey on

Personal Injuries, published in 1897, sec. 469, treats of our law on this subject separately and apart under the subhead of "Missouri Rule." This is a most important department of the law. It is lamentable, indeed, that such a conflict should be found in our decisions. A conflict of this kind should not exist in one jurisdiction. The rights of the poor who enter into employment and the rights of the rich who employ labor as well as those of moderate means on either side, are alike involved. It is a duty the state owes to the citizen and it is the province of the court to discharge this duty on behalf of the State to the end that the rights of either shall be ascertained and measured by the same principles in every instance of like causes. It is not only wrong as a matter of law but it is highly unjust as well to the employer for a cause to be decided upon the principles of the law of contributory negligence and the employer be held to answer in damages if forsooth he was unable to show that the injured employee had been guilty of negligence that contributed to the injury when in fact the employee by his contract of employment assumed the very risk from which he was injured. On the other hand, it is equally unjust to the employee to apply the principles of the law of assumption of the risk in a case where he has been injured by the negligence of the master arising out of a state of facts which does not bring his case within the law, and deny to him a recovery upon the grounds that he had, either by implied contract or by virtue of the maxim, *volenti non fit injuria,* assumed the risk of the master's tort, when the injury from which he suffered was not a risk ordinarily incident to the employment, nor was it one of those obvious risks which he assumes by continuing in the employment with full knowledge or so obvious that he is held to have understood its dangers. Entertaining these views and impressed as we are with the importance of the subject, in order to avoid muddying the water ourselves, if possible, we have devoted much labor

and careful thought to the cases both in this and other jurisdictions, hoping to be able to evolve therefrom understandingly, a correct solution of the present state of the law on the subject and make an intelligent application thereof to the case in hand. In a number of very recent decisions of our Supreme Court which are urged upon us by counsel for respondent, that Court has held that the servant assumes only such risks as are ordinarily incident to the employment under these rulings so much of the law of assumption of risk as has been settled to have its resting place upon the maxim *volenti non fit injuria* aforesaid, aside from the contract seems to be treated as not applicable in this State. Those cases in effect hold that in case of an injury resulting from the master's negligence, even though the defects from which it arose were patent and danger obvious, or in case the servant having actual knowledge thereof and appreciating its danger, is not a risk assumed by virtue of his continuing in the employment with such knowledge and appreciation. Those cases limit the risk assumed to those ordinarily incident to the employment which are impliedly assumed under the contract of labor, and in Curtis v. McNair, 173 Mo. 280, 73 S. W. 167, the court intimates that the servant cannot make an express contract assuming extra hazards from the master's negligence. On this point, citing Blanton v. Dold, 109 Mo. 64, 18 S. W. 1149, where the court made the statement that such express contract in solemn form had been decided by a number of American courts as contrary to public policy, the statement was made in discussion, it was not the point in decision.

In Pauck v. St. Louis Dressed Beef and Provision Co., 159 Mo. 467, 61 S. W. 806, the court said: "The danger being from a defective appliance, it was not naturally incident to plaintiff's employment and was therefore not assumed," citing Henry v. Railway, 109 Mo. 448, 19 S. W. 239; Nichols v. Glass Co., 126 Mo. 55, 28 S. W. 991.

In Curtis v. McNair, supra, the court said: "The only risk a servant does assume is that which is liable to happen on account of the nature of the business when the master has used reasonable care to avoid such result."

In Cole v. Transit Co., 183 Mo. 94, 81 S. W. 1138, the court said: "The servant assumes the risk of danger incident to the employment but he never assumes the risk of his master's negligence. If his master furnishes him unsafe implements and he uses them, knowing them to be unsafe, a question of contributory negligence arises, but not of assumption of risk."

In Wendler v. House Furnishing Co., 165 Mo. 537, 65 S. W. 737, the court said: "The court tried the case under the rules of law laid down by this court in Settle v. Railway, 127 Mo. 336, 30 S. W. 125, and again in Pauck v. Provision Co., 159 Mo. 457. In those cases it was shown that it was the duty of the master to use ordinary care in furnishing instrumentalities with which his servants are to work, so as to render them reasonably safe and that a danger arising from a neglect to do so is not a risk assumed by the servant, and further, that this duty of the master is a continuing duty and though the servant may know that it has been neglected in the past, the master is not thereby relieved of it, nor does the servant assume the risk of his negligence; that is to say, the neglect of the duty by the master with the servant's knowledge or even by express contract between the master and servant (Blanton v. Dold), does not convert the danger arising therefrom into a risk of the employment assumed by the servant. In such case, the servant's knowledge of the condition is a fact to be considered under the plea of contributory negligence, and under that head it precludes a recovery only when the danger is so glaring that a man of ordinary prudence, under the circumstances, would have refused to do his master's bidding."

In Settle v. Railway, 127 Mo. 336, the court said:

"The question has often been raised, discussed and decided, whether a servant can recover for injuries incurred in the use of machinery or appliances known by him to be defective. The non-liability of the master in such cases, however, is properly placed on the ground of contributory negligence rather than that of assumption of risk. The question is one of contributory negligence which should be submitted to the jury unless the defect is so glaringly hazardous that the court could declare, as a matter of law, that a person of ordinary prudence would not use it." See also Bailey on Personal Injuries, sec. 469, where the above doctrine is incorporated in the text by the author under the heading of "Missouri Rule."

Under the doctrine announced in these cases there would be no difficulty about the right of respondent to have his case submitted to a jury as was done in those cases, as his continuance in the service with knowledge of the defective condition of the gearing of the handcar would not preclude his recovery on the ground that he had assumed the risk unless such defect was so glaringly dangerous as to make it a matter for the court and we do not think it was so glaringly dangerous. But under section 6 of the Amendment to the Constitution, adopted November, 1884, the last previous ruling of the Supreme Court on any question of law or equity shall in all cases be the controlling authority in this court. It is therefore our duty to try the case in hand in accordance with the doctrine announced in Mathias v. Kansas City Stock Yards Company, — Mo. —, 84 S. W. 66. That was a case in court In Banc. The court divided. The majority opinion by Judge Fox adverts to the old doctrine and revives so much of the law of assumption of risk which rests upon the maxim *volenti non fit injuria* or assent to risk, apart from the ordinary hazard of the employment which is assumed by implication in the contract. The court there quotes approvingly from Roberts v. Telephone Co., 166 Mo. 378-379, 66 S. W. 155, as

follows: *"The servant is held, by his contract of hiring, to assume the risk of injury from the ordinary dangers of the employment; that is to say, from such dangers as are known to him, or discoverable by the exercise of ordinary care on his part.* He has, therefore, no right of action, in general, against his master, for an injury befalling him from such a cause. *His right to recover will often depend upon his knowledge or ignorance of the danger. If he knew of it, or was under a legal obligation to know of it, it was part of his contract, and he cannot in general recover,"* citing Thomas v. Railway, 109 Mo. 1. c. 199, 18 S. W. 980; Price v. Railway, 77 Mo. 620; Steinhauser v. Spraul, 127 Mo. 1. c. 562, 28 S. W. 102, 27 L. R. A. 441. The court also quoted approvingly from Nugent v. Milling Co., 131 Mo. 235: *"The servant, when he enters the employment of his master, assumes not only the risks incident to his employment, but all dangers which are apparent and obvious as a result thereof."* The court also quotes approvingly section 1008, 2 Thompson on Negligence, as follows: "If the servant, before he enters the service, knows, or if he afterwards discovers, or if, by the exercise of ordinary observation or reasonable skill and diligence in his department of service, he may discover, that the building, premises, machine, appliance, or fellow-servant in connection with which or with whom he is to labor, is unsafe or unfit in any particular, and if, notwithstanding such knowledge, or means of knowledge, he voluntarily enters into or continues in the employment without objection or complaint, *he is deemed to assume the risk of the danger thus known or discoverable and to waive any claim for damages against the master in case it shall result in injury to him."* It also quotes from SHERWOOD, J., who delivered the majority opinion in Steinhauser v. Spraul, 127 Mo. 562, as follows: "Again, no principle is more frequently enunciated or more often applied in the adjudicated cases than that which holds that an employee,

in engaging in the service of another, assumes the risks incident to such employment, and this is especially true of *seen dangers and patent defects.*"    (The italics above are our own, except the words "seen dangers and patent defects" quoted from Judge SHERWOOD.)    The court in Banc applied these well-settled principles of law pertaining to assumption of risk and hazard, resulting from obvious defects which are known and appreciated or which are so obvious that their dangers must be understood, to the case in decision, thereby in effect overruling Pauck v. St. Louis Dressed Beef & Provision Co., Curtis v. McNair, Cole v. St. Louis Transit Co., Wendler v. House Furnishing Co., supra, in so far as those cases limited the doctrine to risks ordinarily incident to the employment.

It is well settled in this State and there is no controversy in this case to the contrary that, "It is the duty of the master to use reasonable care to furnish his employees with a reasonably safe place to work and with reasonably safe and suitable machinery and appliances. The master's duty in this regard does not end here, but is a continuing one. The law imposes upon him the further obligation of using reasonable care to keep such place of work and such instrumentalities in a reasonably safe condition, and this, of course, is to be accomplished by a proper and timely inspection for defects and the repairs thereof." 20 Am. & Eng. Ency. Law (2 Ed.), 88; Williams v. Railway, 119 Mo. 316, 24 S. W. 782; Mathias v. Stockyards Co., — Mo. —; Herdler v. Buck Stove & Range Co., 136 Mo. 3, 37 S. W. 115; Rodney v. Railway. 127 Mo. 676, 28 S. W. 887, 30 S. W. 150; Settle v. Railway, 127 Mo. 336, 30 S. W. 125; Pauck v. St. Louis Dressed Beef & Prov. Co., 159 Mo. 467, 61 S. W. 806; Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Harff v. Green, 168 Mo. 308, 67 S. W. 576; Choctaw & Okl. Ry. Co. v. McDade, 191 U. S. 64; Thompson on Negligence, sec 3759.

In view of the recent decision of our Supreme Court

in Mathias v. Kansas City Stock Yards Co., supra, the doctrine of which we find to be in line with the best courts in the country as well as with the most able text-writers, we have been able to evolve the following rule as to risks assumed, which is amply supported by authority. The rule will be stated in two sections or divisions as there is not now and never has been any conflict in regard to the first division thereof.

First: It has been the law all of the time that the servant, upon entering into contract of employment, assumes the hazards which result from such risks as are ordinarily incident to the employment in which he engages. This proposition is so well settled that we scarcely need to cite authorities thereon. Thompson on Neg., sec. 4613; Beach on Cont. Neg., sec. 360; 2 Am. & Eng. Ency. Law, 413; Curtis v. McNair, 173 Mo. 270; Pauck v. St. Louis Dressed Beef & Prov. Co., 159 Mo. 467; Settle v. Ry. Co., 127 Mo. 336; Cole v. Transit Co., 183 Mo. 81, 81 S. W. 1138; Dean v. St. Louis Woodenware Co., 106 Mo. App. 167; Adolff v. Columbia Pretzel & Baking Co., 100 Mo. App. 189; Choctaw & Okla. Ry. Co. v. McDade, 191 U. S. 64; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 63 L. R. A. 551; Thomas v. Quartermain, Q. B. D., 18 L. R. 685; Sullivan v. India Mfg. Co., 113 Mass. 396. In addition to the risks assumed above mentioned, the servant, either by entering or continuing in the service and using, without complaint, defective appliances and machinery, assumes the hazards of such defective appliances and machinery, providing the servant knew of both the said defects and dangers liable to result therefrom. It is not enough for him to know of the defects; he must also know, understand and appreciate the dangers thereof. That he did understand the danger must appear either from positive evidence to that effect of the danger, as well as the defect, must be obvious. The law will not charge the servant with knowledge, nor will it presume him to have known the defects, ordinarily, which could have been ascertained.

by the exercise of ordinary care and diligence on his part, for the law does not require him to search for latent defects in the machinery but in case of patent and obvious dangers and in case of patent and obvious dangers alone, the law charges him with knowledge, or in other words, will presume that he knew such dangers as were obvious from a given defect and which were necessarily sequent therefrom. The first division of the proposition above stated, that he assumes the risks ordinarily incident to the employment, is bottomed upon and grows out of the contract of employment in which it is necessarily implied that the servant, for a consideration, having undertaken to perform the services for the master must also, and in fact, has, for the same compensation undertaken and agreed to assume such hazards as are ordinarily incident to such employment, whereas the second or latter part of the proposition, that involving patent defects and obvious dangers rests not alone upon the contract of hire, but upon the maxim *volenti non fit injuria,* which is defined by Black as "He who consents cannot receive an injury," which, like the contract itself, involves the idea of assent on the part of the servant, that is, the free and open activity of the senses, the understanding of the situation and the untrammeled consent to cope therewith. These views find support in the following authorities: 4 Thompson on Neg., sec. 4610-4612; Beach on Cont. Neg. (3 Ed), sec. 370; Wood, Master and Servant, sec. 327; 1 Labatt, Master and Servant 644; Mathias v. Stock Yards Co., — Mo. —, 84 S. W. 69; Cole v. Transit Co., 183 Mo. 90, 81 S. W. 1138; Pauck v. Prov. Co., 159 Mo. 478, 61 S. W. 806; Roberts v. Tel. Co., 166 Mo. 370, 66 S. W. 155; Hamman v. Coal Co., 156 Mo. 244, 56 S. W. 1091; Epperson v. Postal Co., 155 Mo. 375-376, 50 S. W. 795, 55 S. W. 1055; Lucey v. Hannibal Oil Co., 129 Mo. 40, 31 S. W. 340; Steinhauser v. Spraul, 127 Mo. 562, 28 S. W. 630; Junior v. Electric Co., 127 Mo. 83, 29 S. W. 988; Thomas v. Railway, 109 Mo. 198, 18 S. W. 980; Huhn v. Railway, 92 Mo. 440, 4

S. W. 937; Price v. Railway, 77 Mo. 511; Devlin v. Railway, 87 Mo. 550; Fugler v. Bothe, 117 Mo. 501, 22 S. W. 1113; Rains v. Railway, 71 Mo. 168; Stoddard v. Railway, 65 Mo. 514; Cummins v. Collins, 61 Mo. 523; Thorpe v. Railway, 89 Mo. 662; Conroy v. Vulcan Iron Works, 62 Mo. 39; DeVitt v. Railway, 50 Mo. 302; Browning v. Kasten, 107 Mo. App. 59, 80 S. W. 354; Going v. Railway, 37 Mo. App. 232; Valley Railway Co. v. Keegan, 31 C. C. A. 255; Kohn v. McNulta, 147 U. S. 238; Patterson v. Ry., 76 Pa. St. 389; Sullivan v. India Mfg. Co., 113 Mass. 396; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 63 L. R. A. 511; Smith v. Railroad, 42 Minn. 87, 43 N. W. 968; Berger v. Railroad, 39 Minn. 78, 38 N. W. 814; Green v. Railroad, 31 Minn. 248; Clark v. Railroad, 28 Minn. 128; Fleming v. Railroad, 27 Minn. 111-114.

In the case of Price v. Railway, supra, the subject was treated of as contributory negligence, but the doctrine announced is the same as that stated above. The distinction as stated in Keegan v. Kavanaugh, 62 Mo. l. c. 232, in a case not involving a risk ordinarily incident to the employment, is, "If the risk is such as to be perfectly obvious to the sense of any man, whether servant or master, then the servant assumes the risk, but if it is a case where no such obvious risks are incurred, and where it was fair to presume that the employer had been guilty of *no* negligence, the rule of law as well as of common sense and justice is, that the master is responsible for damages, if any ensue." The word, "no" italicized, next prior to the word, "negligence," evidently was a misprint and should be stricken out in reading. This distinction is borne out by the following cases: Hollenbeck v. Railway, 141 Mo. 97, 38 S. W. 723; 41 S. W. 887; Fugler v. Bothe, 117 Mo. 501; Hulett v. Railway. 67 Mo. 242; Porter v. Railway, 60 Mo. 162, 71 Mo. 78; Dean v. St. Louis Woodenware Co., 106 Mo. App. 167, 80 S. W. 896; Browning v. Kasten, 107 Mo. App. 59, 84 S. W. 354; Choctaw & Okla. Ry. Co. v. McDade, 191 U. S. 64;

St. Louis Cordage Co. v. Miller, 126 Fed. 495, 63 L. R. A. 551; Valley Ry. Co. v. Keegan, 31 C. C. A. 255.

Bailey in his work on Personal Injuries, sec. 465, says: "If the danger is so great that an ordinarily prudent man would have observed and heeded it, then it is one which the employee assumes, if he has knowledge of its existence, and without any promise on the master's part to remove the danger he voluntarily continues in the service of his employer."

"A servant will be presumed to have notice of and to have assumed the risks incident to all dangers and defects which, to a person of his experience and understanding, are or ought to be patent and obvious." [20 Am. & Eng. Ency. Law (2 Ed.), 112.]

Hidden dangers and latent defects, which might have been discovered by ordinary diligence on the part of the master, are said to be no part of the risks ordinarily assumed in the employment and this is very properly stated on the ground that he could not assume a risk or danger of which he was ignorant. [20 Am. & Eng. Ency. Law (2 Ed.), 121; Clowers v. Railway, Co., 21 Mo. App. 217; Connolly v. St. Joe Press & Ptg. Co., 166 Mo. 463, 66 S. W. 268; Dale v. Railway, 63 Mo. 460.] Nor is it incumbent upon the servant to search for latent defects in the machinery and appliances furnished him by his employer, for he has the right to assume that the master has discharged his duty by using ordinary diligence to discover such defects and that such appliances are safe and sufficient for the purpose for which they were furnished. [20 Am. & Eng. Ency. Law (2 Ed.), 121; Connolly v. St. Joe Press & Ptg. Co., 166 Mo. 463, 66 S. W. 268; Hollenbeck v. Railway, 141 Mo. 97; Herdler v. Buck Stove & Range Co., 136 Mo. 17, 37 S. W. 115; Sullivan v. Railway, 107 Mo. 78, 17 S. W. 748; Covney v. Railway, 86 Mo. 641; Aldridge v. Midland Blast Furn. Co., 78 Mo. 564; Porter v. Railway, 71 Mo. 78, 60 Mo. 162; Keegan v. Kavanaugh, 62 Mo. 232; Browning v. Kasten, 107 Mo. App. 59, 80 S. W. 355.] The ser-

vant is held, however, to have assumed the risk from such latent defects as could not have been discovered by the exercise of ordinary care on the part of the master, the rule being that no knowledge of such defects or appreciation of their dangers need be shown on the part of the servant as they are risks included in the class ordinarily incident to the employment.

We have seen that hidden dangers and latent defects which could have been discovered by ordinary care on the part of the master, are no part of the risks assumed under the contract of employment by the servant. Such risks are not assumed for two reasons; first, the servant has a right to assume the master has discharged his duty and made search therefor. Such defects although not being obvious, are of that class liable to discovery upon the reasonable inspection which the law requires of the master. They are latent and hidden to an extent and hence cannot be taken into calculation when the contract of employment is entered into, the dangers therefrom being concealed and not being ordinarily incident to the employment, are not by implication carried into the contract as the minds of the parties could in no way have met thereon and the servant could not have consented or assented thereto. The second reason is they are not assumed because they are dangers which are not obvious and cannot come into the class of risks assumed aside from the contract, by virtue of the maxim aforesaid, which maxim implies knowledge, tacit waiver and assent. There could be no knowledge, no waiver of nor consent to a danger which is hidden and unknown. In treating of this question, we must keep in mind the fact that the doctrine of assumption of the risk rests upon the free and voluntary action of the mind of the servant. He is charged with the risks in the first instance, because he understood that he accepted such risks as are incident to the employment by engaging therein and in the second instance, he accepted such risks as are obviously dangerous by entering or continuing in the em-

ployment without complaint thereof, not because he has been negligent and inattentive thereto, but because he has seen and necessarily understood and appreciated the hazard and by continuing with it, assented thereto. On either branch of the assumption we are essentially carried back to the same starting point, that is, the free and voluntary action of the mind of the individual assuming the risk. The words "assumed the risk" themselves, involve and imply free mental action upon the risk, and that such mental action has been favorable to the extent that the risk has been considered, assented to and assumed. All of the requirements of the law on this subject points to the same inevitable conclusion that the law of assumption of the risk rests upon agreement or assent, which can arise in no other manner than through the free and voluntary action of the mind. No part of it rests upon such negative state of the mind as inattention, oversight, want of care, lack of prudence, neglect. No part of it rests upon, nor is imbedded in the negligence of the servant and no part of the law covering the question rests upon the law of contributory negligence. "The question of assumption of risk is quite apart from that of contributory negligence." [Choctaw & Okla. Ry. Co. v. McDade, 191 U. S. l. c. 68.] "Assumption of the risk rests in contract, contributory negligence rests in tort." [St. Louis Cordage Co. v. Miller, 126 Fed. 495, 63 L. R. A. 551, 554, 34 L. Ed. 235, 10 Supt. Ct. Rep. 1044; Adolff v. Columbia Baking Co., 100 Mo. App. 206, 73 S. W. 321.] To follow the question further, all of the authorities agree that to hold one to have assumed a risk other than the risk ordinarily incident to the employment, which risk he has considered and agreed to in his contract and by agreeing to accept compensation therefor he is precluded from denying, it must be shown that he had knowledge of the risk and further, that he so understood the risk as to appreciate its dangers, unless the risk and its dangers be obvious, in

which latter case, the law does not charge him with knowledge so much as it precludes him from denying obvious dangers universally known. "An extraordinary risk, it is said, is not assumed unless it is, or ought to be, known to and comprehended by the servant, or— as the same conception may be expressed in logically equivalent terms—where the servant is chargeable neither with an actual nor constructive knowledge and comprehension of the risk." [1 Labatt, Master and servant, sec. 271.] "The essence of the matter is that the employee must thoroughly comprehend the risk if it exceeds that ordinarily connected with such task and freely accept it." [Dean v. St. Louis Woodenware Co., 106 Mo. App. 167, 80 S. W. 296.] "The doctrine that the servant who has no knowledge, actual or constructive of an extraordinary risk, is not chargeable with its assumption, is applied in every jurisdiction in which the principles of the common law are recognized." [1 Labatt, Master and Servant, sec. 274a.] "In order to constitute an assumption of risk from a defect it is not only neccessary that the employee should know of the defect, but the dangers arising therefrom must also be known to him or within the observation of reasonably prudent men in his situation." [20 Am. & Eng. Ency. Law (2 Ed.), 122.] Our Supreme Court, recognizing this principle, that the risk must be both known and appreciated, said: "The plaintiff knew to a certain extent the defect of the tie beam but did not know of the dangers to which he was subject by reason of the defect." [Sullivan v. Railway, 107 Mo. l. c. 178.] For cases supporting these views, the following are cited: Hollenbeck v. Railway, 141 Mo. 97; Doyle v. M. K. & T. Trust Co., 140 Mo. 19, 41 S. W. 255; Helfenstein v. Medart, 136 Mo. 614, 36 S. W. 863, 37 S. W. 829; Fugler v. Bothe, 117 Mo. 475; Murphy v. Wabash, 115 Mo. 126, 21 S. W. 862; Soeder v. Railway, 100 Mo. 673, 13 S. W. 714; Huhn v. Railway, 92 Mo. 440, 4 S. W. 937; Dowling v. Allen, 88 Mo. 298; Dowling v. Allen & Co., 74 Mo. 18; Browning v. Kasten, 107 Mo. App. 51, 80 S.

W. 355; Dean v. St. Louis Woodenware Co., 106 Mo. App. 167, 80 S. W. 296; Bridges v. Railway, 6 Mo. App. 394; Mueller v. LaPrelle Shoe Co., 109 Mo. App. 506, 84 S. W. 1010; Connally v. Amer. Ex. Co., 87 Me. 352, 32 Atl. 965; Cunningham v. Bath Iron Works, 92 Me. 501, 43 Atl. 106; Rummel v. Delworth, 131 Pa. 509, 19 Atl. 345-346; Reed v. Stockmeyer, 20 C. C. A. 381, 34 U. S. App. 727, 74 Fed. 186; Houts v. St. Louis Transit Co., 108 Mo. App. 686, 84 S. W. 161.

This same principle is recognized fully in Mathias v. Kansas City Stock Yards Co., 84 S. W. l. c. 71, where the court said: "We feel in this state of facts that there is no escaping the conclusion that plaintiff fully appreciated the risk which was incident to the work he was performing and assumed it and cannot recover in this action." In Murphy v. Wabash Ry. Co., 115 Mo. 126, the court said: "It is clear that the plaintiff did not assume any risk arising from the fact that the fence was too close to the track, unless he knew the fence was close enough to the track to strike his body, and we have seen that this court cannot say that he had such knowledge. In Doyle v. M. K. & T. Trust Co., 140 Mo. 19, the court said: "It is one thing to be aware of defects in the instrumentalities or plan furnished by the master for the performance of his services and another thing to know and appreciate the risk resulting or which may follow from such defects."

Many cases, where the particular point is not in judgment, make the broad statement that the servant assumes besides the risks ordinarily incident to the employment, such risks as might have been discovered by him in the exercise of ordinary care on his part and from those cases some of the text-writers have gleaned such expressions and incorporated them in their text when employing judicial expressions to make up a general rule on the subject. We cannot agree to this proposition so broadly stated. This doctrine would place upon the servant the obligation to use ordinary care to dis-

cover defects and if he neglected to employ such care to make such discovery, then on account of such negligence or inattention to his duties, such want of due care on his part and such oversight, all arising from purely a negative state of the servant's mind, he would be charged with the assumption of risk which he could only do by an operation of the mind exactly to the converse of negligence. Want of care is negligence, not assumption of risk. This is the point at which, without much careful thought, the doctrine becomes confused. It is perfectly apparent that if the servant is not required to search for latent defects, which the master might have discovered by ordinary care, as is abundantly sustained by the authorities supra, and does not assume the risk of latent and hidden defects except those impossible of discovery by the master in the exercise of ordinary care which are therefore treated as incident to the employment, as is fully supported by the authorities supra, the rule of law, requiring him to use ordinary care to discover defects, would so militate against the two propositions last stated that they could not stand together as rules regulating conduct in the same case, and therefore the two propositions so well settled, must necessarily eliminate the third. And again, it is settled by all of the authorities, many of which are cited supra, that unless it be an extra hazard which is so obvious that no one could fail to understand its dangers, the servant is held not to have assumed the risk unless he had knowledge of the defect and also understood and appreciated its dangers. This proposition which is so abundantly fortified in the law, and the very reason of the law as well on this subject, authorities supra, cannot stand if the servant is to be charged with constructive knowledge of defects and dangers which he never actually knew and therefore could not understand and could not appreciate. The proposition can be summarized thus: First, if the servant does not assume the risk of latent defects which the master might

have discovered by ordinary care, and is not required to search for hidden dangers so neglected by the master, then the expression that he assumed the risks ordinarily incident to the employment and those he might have discovered by the exercise of ordinary care, are too broad. Second, if he is required to understand and appreciate the danger before he can be held to assume the risk, the expressions to the effect that he assumes also such risks as could be discovered by him in the exercise of ordinary care, are utterly inconsistent therewith. Upon this hypothesis, he would be held to assume risks which he might have known had he not been negligent, which risks he neither knew nor understood, whereas the law requires him to both know and understand. The tendency of the courts to confound the doctrine with negligence no doubt has given birth to much of the loose expression in opinions. Evidently what the courts have intended to convey in these expressions is the doctrine as stated by Judge NAPTON in Keegan v. Kavanaugh, 62 Mo. l. c. 232, and which was quoted approvingly in one of the very ablest opinions in our books, Judge ROMBAUER'S dissent, in Fugler v. Bothe, which opinion was adopted *in toto* by our Supreme Court and is reported in 117 Mo. 493. Judge NAPTON said: *"If the risk is such as to be perfectly obvious to the senses of any man, whether master or servant, then the servant assumes the risk,"* and it is in a case of such obvious risk only when there could be no other sequence of the defect or risk than calamity that the law charges the servant with constructive knowledge. "To justify a presumption of knowledge, the defect must be obvious and its dangers equally plain to one and all attentive." [Valley Ry. Co. v. Keegan, 31 C. C. A. 261.] In speaking of obvious dangers, the Supreme Court of the United States said: "Upon this question the true test is not the exercise of care to discover dangers, but whether the defect is known or plainly observable by the employed." [Choctaw & Okla. Ry. Co. v. McDade, 191 U. S. 68; Texas

& Pacific Ry. Co. v. Archibald, 170 U. S. 665.]

In Porter v. Railway, 60 Mo. 162, the point in decision was the alleged error of the trial court in striking out of the instruction the words "or could, by the exercise of ordinary diligence have known it," which words would have charged the plaintiff with constructive knowledge and the assumption of the risk involved. The Supreme Court said: "The court struck out the paragraph, and we think, properly." In the same case on the second appeal, Porter v. Railway, 71 Mo. 79, the court said: "If the *servant*, as was held, *is not*, and the *master is required to exercise diligence to discover defects* in the machinery with which the servant is employed to work, the latter may recover, although he may have had equal means of ascertaining its defects, if in fact he was ignorant of their existence and they were not *patent or such as would have been discovered by operating it as above stated.*"

In Missouri Pacific Ry. v. Lehmberg, 75 Tex. 61-67, the court said: "We think it sufficient to say that *the law does not under any circumstances exact from him the use of diligence in ascertaining such defects but charges him with knowledge of such only as are open to his observation.* Beyond that, he has the right to presume *without inquiry or investigation* that his employer has discharged his duty in furnishing him safe and proper instruments and appliances." This case is cited and quoted approvingly by the Supreme Court of the United States in Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 671, in which case this identical question was in judgment by virtue of the trial court having stricken out of certain instructions the words "or by the exercise of ordinary care could have known." The Supreme Court of the United States said: "These requests the court gave, except in the first it omitted the words therein italicized, that is, 'by the exercise of ordinary care could have known,' and the second 'or could have known it by the exercise of ordinary care.'

The court was clearly right in striking the words from the requests. . . . *No reason can be found for and no authority exists supporting the contention that an employee, either from his knowledge of the employer's methods of business or from a failure to use ordinary care to ascertain such methods, subjects himself to the risks of appliances being furnished, which contain defects that might have been discovered by reasonable inspection.* . . . .In assuming the risks of the particular service in which he engages the employee may legally assume that the employer, by whatever rule he elects to conduct his business, will fulfill his legal duty by making reasonable efforts to furnish appliances reasonably safe for the purpose for which they are intended; and whilst this does not justify an employee in using an appliance which he knows to be defective, or relieve him from observing patent defects therein, it obviously *does not compel him to know or investigate the employer's modes of business, under the penalty, if he does not do so, of taking the risk of the employer's fault in furnishing him unsafe appliances.* In Davidson v. Cornell, 132 N. Y. 228, the court said: "It is, as a general rule, true that a servant entering into employment which is hazardous, assumes the usual risks of the service, and those which are apparent to ordinary observation, and, when he accepts or continues in the service with knowledge of the character of structures from which injury may be apprehended, he also assumes the hazard incident to the situation. [Gibson v. Erie Railway Co., 63 N. Y. 449; DeForset v. Jewett, 88 N. Y. 264; Sweeney v. Berlin & Jones Envelope Co., 101 N. Y. 520; Hickey v. Taaffe, 105 N. Y. 26; 12 N. E. Rep. 286; Williams v. Delaware, Lackawanna, etc., Railroad, 116 N. Y. 628.] Those not obvious assumed by the employee are such perils as exist after the master has used due care and precaution to guard the former against danger. And the defective condition of structures or appliances which, by the existence or reasonable care of the master,

may be obviated and from the consequences of which he is relieved from responsibility to the servant by reason of the latter's knowledge of the situation, is such as is apparent to his observation. [Kain v. Smith, 89 N. Y. 375; McGovern v. Central Vermont Railroad, 123 N. Y. 280.]" (The italics are our own.)

We are unable to agree to appellant's contention that because respondent continued in the service a week with knowledge of the defect, he must also be charged with having known and appreciated its dangers and therefore assumed the risk. Respondent testified that he had never seen an accident occur from a like cause and that he did not consider the defect dangerous if the car was operated at a moderate rate of speed, as it was. In view of this testimony, he could be held to have assumed the risk only in one of two cases: First, that the risk was one ordinarily incident to the employment. That it was not such risk is palpable and it is not contended that it was. Second: that the danger from the defect was obvious, so obvious that he could not be heard to say that he did not understand and appreciate it. We are unwilling to say that because the cogs in the bull wheel and pinion were tight and binding in their operation so that the car at times had been noticed to pull heavily, that it was obvious therefore that such cogs would become locked when the car was being operated at a moderate rate of speed or any rate of speed for that matter, and cause a derailment. Such an occurence is not so ordinary and common under like circumstances as to be obvious. It was certainly not so considered by the experienced men who had the car in charge. The evidence shows the foreman and all of the men continued to use the car with the same knowledge respondent had, evidently not considering the danger nor defect fruitful of imminent peril. For us to say as a matter of law that the dangers therefrom were obvious, would be going quite beyond the province of the court

and invading that of the jury. We hold that whether or not the danger from the defect was obvious in this case was a proper question for the jury and that the trial court did not err in refusing appellant's demurrer.

There is no contention that the appellant was not negligent. This is one of those cases in which the mere statement of the occurrence is an implication of negligence. The bull wheel and pinion were made to revolve, the cogs fitting into each other, and thus propel the car. Their sudden locking and the resultant derailment of the car is proof of negligence on the part of appellant in that they were defective. [Blanton v. Dold, 109 Mo. 64, 18 S. W. 1149; Mooney v. Lumber Co., 154 Mass. 407.] The appellant contends, however, that because of respondent's knowledge of the defect and of his continuing in the service thereafter, he failed to exercise ordinary care and prudence, looking to his own safety and that such negligence contributed to his injury and therefore he is not entitled to recover. It is well-settled law that the servant is not obliged to refuse to use an appliance or quit the service of the master if he reasonably believes that by proper care and caution he can safely use the appliance, notwithstanding they are not so reasonably safe as the master is required to furnish. Mere knowledge that the cogs were defective is not, as a matter of law, sufficient to defeat plaintiff's action if the danger therefrom was not so obvious as to threaten immediate injury. [Mathias v. K. C. Stock Yards Co., — Mo. —, 84 S. W. 69; Henderson v. Kansas City, 177 Mo. 491, 76 S. W. 1045; Harff v. Green, 168 Mo. 314, 67 S. W. 576; Wendler v. House Furn. Co., 165 Mo. 540, 65 S. W. 737; Duerst v. Stamping Co., 163 Mo. 622, 63 S. W. 827; Hamman v. Coal Co., 156 Mo. 244, 56 S. W. 1091; Doyle v. M. K. & T. Trust Co., 140 Mo. 19, 41 S. W. 255; Herdler v. Buck Stove & Range Co., 136 Mo. 17, 37 S. W. 115; Holloran v. Iron & Foundry Co., 133 Mo. 476, 35 S. W. 260; Settle v. Ry., 127 Mo. 343, 30 S. W.

125; Sullivan v. Railway, 107 Mo. 78, 17 S. W. 748; Stevenson v. Ry., 96 Mo. 212; Devlin v. Ry., 87 Mo. 550; Shearman & Redfield on Negligence (5 Ed.), sec. 211-212; 14 Am. & Eng. Ency. Law (1 Ed.), 844.]

In Soeder v. St. L., I. M. & S. Ry. Co., 100 Mo. 681, the court said: "The deceased's knowledge of the unsafe condition of the track, if it was unsafe, would not defeat a recovery if it was not so dangerous as to threaten immediate injury or if he might have reasonably supposed that he could safely work about it by the use of ordinary care and caution." [Mathias v. Stockyards Co., — Mo. —, 84 S. W. 70; Hamilton v. Rich Hill Coal Co., 108 Mo. 375, 18 S. W. 977; Huhn v. Railway, 92 Mo. 440, 4 S. W. 937; Thorpe v. Railway, 89 Mo. 662; Smith v. Little Pittsburg Coal Co., 75 Mo. 181; Herbert v. Mound City Shoe Co., 90 Mo. App. 313; Bridges v. Railway, 6 Mo. App. 394.] A previous knowledge of a defect, if the defect be not such as to threaten immediate and imminent danger therefrom, is not conclusive against plaintiff in cases of this character. It is treated of and held to be a strong circumstance to be taken into consideration but by no means decisive. A leading case on this question is Snow v. Housatanic Ry. Co., 8 Allen 450. The well-settled doctrine in Missouri is, in such cases, mere knowledge of the defect will not defeat a recovery. "Negligence on the part of the servant, in such cases, does not neccessarily arise from his knowledge of the defect, but is a question of fact to be determined from such knowledge and the other circumstances in evidence." [Huhn v. Railway, 62 Mo. 447; Cole v. Transit Co., 183 Mo. 90, 81 S. W. 1138; Henderson v. Kansas City, 177 Mo. 49, 76 S. W. 1045; Wendler v. House Furn. Co., 165 Mo. 540, 65 S. W. 737; Pauck v. St. Louis Dressed Beef & Provision Co., 159 Mo. 477, 61 S. W. 806; Hammon v. Coal Co., 156 Mo. 245, 56 S. W. 1091; Hollenbeck v. Railway, 141 Mo. 110, 38 S. W. 723, 41 S. W. 887; Doyle v. M. K. & T. Trust Co., 140 Mo. 19, 41 S. W. 255; Settle v. Railway, 127 Mo. 344; Soeder v.

Railway, 100 Mo. 681, 13 S. W. 714; Thorpe v. Railway, 89 Mo. 663; Stoddard v. Railway, 65 Mo. 520; Keegan v. Kavanaugh, 62 Mo. 233; Conroy v. Vulcan Iron Works, 62 Mo. 39; Herbert v. Mound City Shoe Co., 90 Mo. App. 312; Wood, Master & Servant, 761; Wood, Railway Law, 1460; 14 Am. & Eng. Ency. Law (1 Ed.), 845.]

Our conclusion on this branch of the case is that the question whether the respondent was negligent in continuing in the employment with the defective handcar was properly for the jury and the court did not err in overruling the demurrer on that score.

2. Appellant further contends that as the brake was on the respondent's side of the car, and as he was properly in charge thereof, he should have acted with care and prudence and used the brake to stop the car and thus have avoided the accident. That he was guilty of negligence contributing to his injury in not doing so. In answer to this we will say that respondent had no warning or notice of the accident. In his testimoy he says: "I started intending to get on the brake—that is, my mind went that way—I don't know whether I made any effort physically or not. When I found myself I was on the track." The proximate cause of the injury was the sudden and unexpected locking of the cogs of the bull wheel and pinion by reason of the defective gearing. "It must appear in order to defeat a right of action that, but for the plaintiff's negligence operating as an efficient cause of the injury, in connection with the fault of the defendant, the injury would not have happened." Beach on Cont. Neg. (3 Ed.), sec. 34. Dickson v. Railway, 124 Mo. 140, 27 S. W. 476; Hueselenkamp v. Railway, 37 Mo. 537. How we could hold that the failure of the respondent to get on the brake was an efficient cause of the injury is more than we can understand. Had he succeeded in getting on the brake as he intended, it would not have caused the car to go forward; if anything, it would have added to the sudden stoppage and

the sudden stoppage of the car was that which threw him onto the track. If the car had gone forward and had not checked so suddenly, he, no doubt, would have been able to remain on the car and would not have been thrown forward against the rail. We cannot say that his failure to use the brake contributed to his injury nor can we say, under the circumstances that if, by using the brake, the injury might possibly have been averted, that he would be chargeable with negligence for not adopting the safest and best course to avoid the injury. It is well settled that when one is exposed to sudden and imminent danger, he cannot be expected to act with that degree of prudence and wisdom which might otherwise have been required of him. In any event, he could not be held to a degree of care greater than that which is required of an ordinarily prudent man under the same circumstances which confronted him. The most prudent men, when confronted with a sudden and unexpected danger, seldom if ever conduct themselves with the same forethought and care which characterize their movements when not so confronted. The care and prudence which the law exacts is always governed by the circumstances of the case and for the courts to hold to a rule other than this, would be both unreasonable and unjust. [Dickson v. Railway, 124 Mo. 140, 27 S. W. 476; Adams v. Railway, 74 Mo. 553; Siegrist v. Arnot, 86 Mo. 200; Snow v. Housitanic Ry., 8 Allen 450.]

What we have said on the assumption of risk and contributory negligence covers the main points in the case and it will be unnecessary to discuss separately the propositions raised under point three in appellant's brief.

Respondent's counsel put one Baxter on the stand and asked him to state what Corbett, the foreman, had said to him about the cause of the accident. Appellant objected to this on the ground that it was hearsay. Respondent insisted that the section foreman stood as vice principal and the statement by him was as an admission or statement against the interest of appellant and there-

fore admissible. Over the objection and exception of appellant, the court permitted the witness to answer that Corbett said the injury resulted from a loose wheel and defective gearing This was error. "Declarations of an agent are admissible as against his principal, only when transacting the business of the principal, as a part of the transaction which is the subject of inquiry in the suit in which they are offered. They are then admitted as verbal acts and as part of the *res gestae.* What he may have said before the transaction is entered into or after its completion as explanatory, is no more admissible than if made by a stranger. Anything in the nature of a narrative is to be carefully excluded." [Adams v. Railway, 74 Mo. 556; Ruschedberg v. Electric Co., 161 Mo. 81, 61 S. W. 626; Barker v. Railway, 126 Mo. 148, 28 S. W. 866; Smith v. Railway, 91 Mo. 58, 3 S. W. 836; Devlin v. Railway, 87 Mo. 549; McDermott v. Railway, 87 Mo. 299; Aldridge v. Midland Blast Furn. Co., 78 Mo. 559; Rodgers v. McCune, 19 Mo. 557; Price v. Thornton, 10 Mo. 135.]

Respondent contends that in as much as the statement of the section foreman was merely cumulative, it could work no harm to appellant and the judgment ought not to be reversed therefor. We cannot say as much. The jury may have attached great weight to this evidence which was admitted in conjunction with respondent's statement and the court's apparent ruling in their presence to the effect that it was an admission against the appellant by one authorized to speak thereon and it may have been the evidence which turned the scale against appellant at the trial. Its admission was manifest error in the face of the many adjudications in this State and because of its admission the judgment cannot stand.

It is unnecessary to notice the other assignments. If errors they be, they will likely not occur on a retrial. For the reason given, the judgment is reversed and the cause remanded. All concur.